In re Robert R. KRILICH & Soltesz/Brandt Development Co., A Florida General Partnership, d/b/a A Florida General Partnership by the trade name of Shoppes of Carrollwood, Debtors.

**Bankruptcy No. 88–1290–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 16, 1988.

Harley Riedel, Tampa, Fla., for debtor.

Richard Prosser, Jacqueline B. Whatley, Tampa, Fla., for Metropolitan Ins. & Annuity Co.

## ORDER ON MOTION TO DISMISS CASE AND FOR SANCTIONS

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 11 case and the matter under consideration is a Motion to Dismiss filed by Metropolitan Insurance and Annuity Company (Metropolitan Annuity). The Motion is based on the contention of Metropolitan Annuity that this is a classic case of a bad faith Chapter 11 filing and therefore it should be dismissed. The matter was set down promptly for consideration especially in light of the fact that Metropolitan Annuity also filed a Motion and sought relief from the automatic stay, a Motion to prohibit use of cash collateral, or in the alternative for adequate protection, and a Motion to sequester the rents. Inasmuch as the disposition of the Motion to Dismiss of this Chapter 11 case would moot out the other Motions filed by Metropolitan Annuity the Court will consider at this time only the facts which are relevant and germane to the Motion to Dismiss as developed and established at the evidentiary hearing.

On December 23, 1985, an entity known as Soltesz/Brandt Development Company, a Florida General Partnership (Soltesz/Brandt) executed in favor of Metropolitan Life Insurance Company (Metropolitan Life) a mortgage on certain real estate and granted a security interest on certain personal properties located in Hillsborough County, Florida. The mortgage granted to Metropolitan Life was to secure the repayment of an obligation represented by the mortgage note of even date in the original principal amount of $9,200,000.00. As an additional collateral to secure the obligation represented by the mortgage note, Soltesz/Brandt also executed and delivered to Metropolitan Life an assignment of its interest in leases in the shopping center involved in this Chapter 11 case, together with a properly executed UCC–1 Financing Statement. The terms of the mortgage note required Soltesz/Brandt to pay to Metropolitan Life interest at the rate of 10.125% monthly until February, 1989, at which time to pay the entire principal balance together with all accrued but unpaid interest.

On May 1, 1986, Metropolitan Life assigned its interest in the note, the mortgage, the security interest and also in the original assignment of the leases to Metropolitan Annuity. In due course, Metropolitan Life filed a continuation statement (UCC–3 Form) with the Secretary of State indicating the change of interest in the Security Agreement. On December 30, 1986, Metropolitan Annuity, in exchange for the payment of $92,000.00 agreed to a transfer of an undivided 80% interest in the partnership to the Exchange National Bank as Trustee under a certain trust agreement No. 40401. This instrument named Robert R. Krilich (Krilich) as beneficiary of the Trust.

On December 31, 1986, Soltesz/Brandt executed a warranty deed and conveyed an undivided 80% interest in the sole real estate it owned to Krilich as a tenant in common.

The property encumbered by the mortgage is a shopping center located in the northern part of Tampa. It consists of approximately 105,000 square feet of rentable space. Prior to June, 1987, the shopping center enjoyed a 90% occupancy rate and had several national tenants. In June, 1987, however, its largest tenant, American Fitness Corporation, which occupied approximately 12,456 square feet, and Warehouse Imports, which occupied 22,320 square feet, vacated the shopping center. This unexpected turn of events immediately resulted in a loss of monthly rent revenue totalling approximately $24,217.00.

By July 1, 1987, Soltesz/Brandt defaulted on its obligation under the mortgage note having failed to make the monthly interest payment on the principal obligation. On October 9, 1987, Metropolitan

Annuity notified Soltesz/Brandt of the default and informed Soltesz/Brandt that it considered the entire balance under the note accelerated and due in full. As Soltesz/Brandt failed to make an acceptable arrangement with Metropolitan Annuity, on November 6, 1987, Metropolitan Annuity filed a foreclosure action in the Circuit Court for Hillsborough County, Florida. In its foreclosure suit, Metropolitan Annuity named as Defendants Soltesz/Brandt Development Company, a Florida General Partnership, and Robert R. Krilich, an Individual. Shortly after the commencement of the foreclosure action, Metropolitan Annuity filed, pursuant to Florida Statute 697.07, a motion in the Circuit Court and sought an order requiring the deposit of all rents collected from the shopping center into the registry of the Court. On November 27, 1987, the Circuit Court entered an order granting the motion and required Soltesz/Brandt to deposit all rents collected into the registry of the Court with the exception of funds which were necessary to pay the utility bills and the insurance for the shopping center. From October, 1987, up to and including the end of January, 1988, Mr. Soltesz attempted to negotiate an arrangement with Metropolitan Annuity, albeit without success, inasmuch as Metropolitan Annuity was not willing to accept anything less than what was due pursuant to the accelerated mortgage note.

On February 5, 1988, the Circuit Court entered a Summary Final Judgment of Foreclosure in favor of Metropolitan Annuity. The Final Judgment fixed the principal amount due to Metropolitan Annuity at $10,306,500.87 and directed that the property be sold at a foreclosure sale. This sale was scheduled to commence at 11:00 A.M. on March 10, 1988. On March 9, 1988, at 4:39 P.M., or 21 minutes before close of business, there was a voluntary petition filed under Chapter 11 in this Court. The Petition identified the Debtor as "Shoppes of Carrollwood." (sic) Shortly before the commencement of the scheduled foreclosure sale, representatives of Metropolitan Annuity were informed for the first time that there was a pending bankruptcy case filed which ostensibly involved the shopping center. They received this news via a hand delivered copy of a Suggestion of Pendency of Bankruptcy. The Suggestion of Pendency recited that the bankruptcy case carried the following caption: Robert R. Krilich and Soltesz/Brandt Development Company, a Florida General Partnership, d/b/a Florida General Partnership by the trade name of Shoppes of Carrollwood. Notwithstanding the identification of the Debtor, or possibly the Debtors, in the caption, the Suggestion of Pendency was signed by an attorney on behalf of Soltesz/Brandt Development Company only. Moreover, the Statement of Financial Affairs filed with the Petition identified "Shoppes of Carrollwood" as the Debtor. The Statement of Financial affairs and the Schedules filed with the Petition indicate that the Debtor currently has no employees; that its total unsecured debts are $74,101.99, the bulk of which, however, consists of claims of insiders totalling $55,038.79. The total amount of non-insider unsecured claims is about $19,000.00. The only secured creditor is Metropolitan Annuity and the amount with the accrued interest at this time owed to Metropolitan is $10,557,545.43 exclusive of attorney's fees incurred since the date of entry of the Final Judgment. The interest is accruing at this time at the per diem rate of $3,380.44 or $101,653.20 per month.

The record further reveals that only 39,000 square feet of the shopping center is currently occupied by tenants and some tenants occupying approximately 9,000 square feet are no longer paying any rent to the Debtor. The present effective occupancy rate is about 29%. The total monthly rent collection at this time is less than $32,000.00. While it is indicated by counsel for the Debtor that the Debtor may have a possible three year lease with Cane Amusement Center involving 5,000 square feet for annual rent of $13.40 per square foot, and a possible five year lease with International Tasty Foods Corporation for 2,500 square feet for the annual rent of $13.82 per square foot, it is clear that the riders attached to these leases indicate that the Debtor offered substantial rent concessions

both to Cane and to International Tasty Foods resulting in annual rent substantially less than the amount fixed by the leases. Moreover, there is no evidence in this record that these leases have been actually executed. According to the expert presented by Metropolitan Annuity, the shopping center at this time is worth, as is, not more than $10,060,000.00. This appraisal is based on an occupancy rate of 45% which assumption is not supported by the actual current rent roll. The expert also indicated however, that based on the current occupancy rate, the value of the shopping center is substantially less.

Following the commencement of this case the Debtor, in its response to the Motion to Lift the Stay, offered adequate protection by offering to pay to Metropolitan Annuity an amount equal to 1½% per annum (which is claimed to be the existing prime rate) on the principal amount of the Final Judgment including accrued interest, or approximately $73,000.00 per month until the confirmation of a plan of reorganization. In addition, the Debtor also proposed in its response as further adequate protection, to pay Metropolitan Annuity the monies currently held in the registry of the Circuit Court or approximately $200,000.00 less the rent collections for the month of April. The Debtor also offered to maintain the project in good order and to pay all current operating expenses at the expense of the Debtor or its general partners.

There is no evidence in this record, either of the financial capability of the Debtor, Mr. Soltesz, or Mr. Krilich to indicate that they will be able to make the payments offered as adequate protection of $73,000.00, which by the way is at least $40,000.00 short of the $101,000.00 which is the interest accruing on the Final Judgment.

Based on these facts, it is the contention of Metropolitan Annuity that under the applicable principles enunciated by this Court and others, this is a classic case of bad faith filing and, therefore, this Chapter 11 case should be dismissed pursuant to § 1112(b) of the Bankruptcy Code which permits dismissal of a Chapter 11 case for "cause." In support of this proposition

Metropolitan Annuity relies on a legion of cases which dealt with the question of bad faith dismissals, particularly the classic case of *In the Matter of Little Creek Development Co.*, 779 F.2d 1068 (5th Cir. 1986) in which Judge Jones for the Fifth Circuit enunciated numerous factors which the courts usually take into consideration in determining whether or not the Chapter 11 case was filed in bad faith.

This Court has also been called upon repeatedly in the past to consider this matter and has held on numerous occasions that any Chapter 11 case which is filed on the eve of a foreclosure sale by a Debtor which has no employees, has no income, and has no realistic expectation to achieve rehabilitation, is not a proper candidate for relief under Chapter 11 because good intentions to achieve rehabilitation by itself are not sufficient. This Court also repeatedly held that there must be a real need for reorganization, and most importantly, a realistic ability to achieve one.

Generally speaking, in a case where dismissal is sought on the basis of bad faith filing, the case involves a Debtor with a single asset; a Debtor with no meaningful unsecured debts; and the controversy is basically between two parties, i.e., the secured creditor and the Debtor, which controversy has already been almost or completely resolved in a non-bankruptcy forum and where the only thing lacking is the conclusion of that particular proceeding, sale of the only asset of the Debtor at the scheduled foreclosure sale. *In the Matter of South County Realty, Inc., II*, 69 B.R. 611 (Bkrtcy.M.D.Fla.1987), *In the Matter of Wellwood Corporation*, 60 B.R. 319 (Bkrtcy.M.D.Fla.1986), *In re American Property Corporation*, 44 B.R. 180 (Bkrtcy.M.D.Fla.1984).

■ Illustrative of this situation is the case of *In re Landmark Capital Company*, 27 B.R. 273 (Bkrtcy.Ariz.1983) where the Debtor filed its Chapter 11 case on the eve of the foreclosure sale after the District Court refused to enjoin the sale of the property. In that case, the Bankruptcy Court was quick to point out, and this Court agrees with the proposition, that

while the filing of a Chapter 11 Petition on the eve of foreclosure is not per se an absolute proof of lack of good faith of the Debtor, it is equally true that the Court shall consider the totality of the circumstances, especially the lack of meaningful number of unsecured creditors. The Bankruptcy Court in *Landmark* found that:

"1. The sole purpose of commencing proceedings was to forestall and thwart North Central's exercise of its power of enforcement under its power of enforcement under its deed of trust;

2. There are not substantial unsecured creditors other than those obligations owed to Landmark's architect, interior designer, accountant and possibly Gabriel Schwartz & Co.;

3. This proceeding is in effect a two-party dispute between Landmark and North Central which should be settled outside of the jurisdiction of the Bankruptcy Court.

4. The conduct of Landmark's principals in utilizing the District Court action for the purpose of unilaterally securing delay in performance on the eve of the foreclosure sale, and Landmark's filing of this Chapter 11 proceeding only after District Judge Hardy had refused to enjoin the sale in the District Court action in order to obtain the automatic stay to delay only North Central, is inconsistent with the purpose, spirit and intent of the Bankruptcy Code, under the facts and circumstances of this case.

*Id.*, at p. 282.

The Court in *Landmark* also discussed the concept of good faith case and stated:

"The requirement that a bankruptcy petition seeking reorganization be filed in good faith is rooted in the provisions of the Bankruptcy Act of 1898 which preceded the current Bankruptcy Code. Under the Bankruptcy Act, the Courts did not hesitate to dismiss a reorganization proceeding or grant a creditor relief from the stay where it appeared that the Court's jurisdiction was being abused or that the debtor was unduly taking advantage of the liberal provisions of the Bankruptcy laws to harass its creditors."

(citing *Marine Harbor Properties v. Manufacturers Trust Co.*, 317 U.S. 78 [63 S.Ct. 93, 87 L.Ed. 64] (1942); *Shapiro v. Wilgus*, 287 U.S. 348 [53 S.Ct. 142, 77 L.Ed. 355] (1932); *In re U.S.A. Motel Corp.*, 450 F.2d 499 (9th Cir.1971); *In re Metropolitan Realty Corp.*, 433 F.2d 676 (5th Cir.1970); *Mongiello Brothers Coal Corp. v. Houghtaling Properties*, 309 F.2d 925 (5th Cir.1962); *In re Mallard Associates*, 463 F.Supp. 1259 (S.D.N.Y. 1979))

*Landmark, supra,* at p. 281.

In an attempt to overcome the obvious and these well established principles enunciated by the cases cited, the Debtor devotes his entire argument to the proposition that the current Chapter 11 relief chapter includes by implication the previous real property arrangement Chapter XII of the Bankruptcy Act of 1898. Based on this it is urged by the Debtor that under Chapter XII it was proper for a Debtor with one single asset involved in a foreclosure proceeding and which was about to be concluded to file for relief under Chapter XII for the sole purpose of readjusting the real estate mortgage involved in the foreclosure, even if the Debtor had no unsecured debts. In support of this proposition, the Debtor cites numerous pre-code Chapter XII cases. *In re Helmwood Apartments*, 2 BCD 1151 (Bkrtcy.N.D.Ga. 1976); *In re Perimeter Park Investment Associates, Ltd.*, 697 F.2d 945 (11th Cir. 1983); *In re Marietta Cobb Apartments Co.*, 3 BCD 720 (Bkrtcy.S.D.N.Y.1977); *In re Samoset Associates*, 10 CBC 515 (Bkrtcy.Me.1976); *In re Pinegate Associates Ltd.*, 2 BCD 1478 (Bkrtcy.N.D.Ga. 1976); *In re Colonial Realty Investment Co.*, 516 F.2d 154 (1st Cir.1975)

In order to overcome the factors recited in *Little Creek Development Co.* and the cases which followed, the Debtor also points out that *Little Creek* itself indicated that none of the factors enumerated are controlling and the Court should make a determination based on a case by case basis. This Court is in full agreement with this proposition, nevertheless, is satisfied that the real test is still the old principle

enunciated in pre-Code cases in the context of Chapter X Corporate Reorganization cases under the Bankruptcy Code of 1898. This test, as noted earlier, stands for the proposition that there must be a real need and a *real* ability to reorganize (emphasis supplied). *Breeding Motor Freight Lines, Inc., v. Reconstruction Finance Corp.,* 172 F.2d 416 (10th Cir.1949), *cert. denied* 338 U.S. 814, 70 S.Ct. 54, 94 L.Ed.2d 1493 (1949); *Fidelity Assurance Assoc. v. Sims,* 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943) Thus if a Debtor's problem is nothing but a mortgage which is in default which has been foreclosed, and the Chapter 11 is filed for the sole purpose of stalling and preventing the sale of the property at foreclosure in the hope and expectation that the property might increase in value and hopefully might create an equity for the owners, it is, a petition which was not filed in good faith. *See In re Albany Partners, Ltd.* 749 F.2d 670 (11th Cir 1984)

██ In this particular case it is clear that this Debtor has only one problem, that is the mortgage which has been foreclosed by Metropolitan Annuity. There is nothing in this record to show any problems with its unsecured debts which are minuscule in light of the total obligations owed by this Debtor. Certainly there is nothing in this record which indicates that this Debtor has a real need to rearrange and reorganize its unsecured debt structure, the bulk of which involves debts due to insiders. Moreover, it is also clear that the shopping center is unable to generate sufficient funds at this time to satisfy the claim of Metropolitan Annuity or even to service the debt owed to Metropolitan Annuity and is unable to prevent the indebtedness owed from increasing. It is evident that this course will, in turn, eat into whatever equity there is and ultimately would eliminate all the equity which the Debtor might have had in the shopping center. To use Chapter 11 for the purpose of forestalling a loss of the property through foreclosure sale, hoping that the Debtor will be able to rent up the property to near or full capacity as it had in the past is nothing but a wholly unsupported pipe dream at this time. This record furnishes scant, if any, support to

accept the proposition that the Debtor will be able to generate sufficient funds to furnish adequate protection to Metropolitan Annuity, and in a reasonably short time to satisfy the debt owed to Metropolitan Annuity.

It is contended by the Debtor that the shopping center is attractive property, it has a unique competitive advantage having a 35,000 square foot facility available for rent. It is not mentioned, however, that in the middle of this floorspace there is a swimming pool which would hardly be attractive to any other tenant, save one which is involved in a business similar to that conducted by American Fitness Center, the previous tenant who occupied this space. Be that as it may, the adequate protection offered by the Debtor is woefully inadequate and falls short of adequate protection, and even assuming that this Chapter 11 if retained by the Debtors would run the fastest possible course, and would reach confirmation within the shortest possible time, during which time the indebtedness still owed to Metropolitan Annuity would possibly increase by $400,-000.00 more, consequently there would be absolutely nothing left to be salvaged through reorganization for the ownership interest.

Having considered all the factors and not following a per se rule this Court is satisfied that the totality of the picture indicates that it is appropriate at this time to grant the motion filed by Metropolitan Annuity and dismiss this Chapter 11 (1) for cause, that is, not having been filed in good faith, and (2) more importantly, for the Debtor's apparent inability to effectuate a meaningful reorganization.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss be, and the same is hereby, granted, and this case will be dismissed after the resolution of the Motion for Sanctions. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Sanctions be, and the same is hereby, rescheduled for

hearing on the 13th day of June, 1988 at 10:15 a.m.