**In re SARASOTA PLAZA ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 89–0061–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 5, 1989.

S. Thomas Padgett, Tampa, Fla., for debtor.

John H. Genovese, Miami, Fla., for Dollar Dry Dock.

William Zewadski, Tampa, Fla., for Metro North State Bank.

Lynn L. England, Tampa, Fla., U.S. Trustee.

## ORDER ON DOLLAR DRY DOCK SAVINGS BANK'S MOTION TO DISMISS AND METRO NORTH STATE BANK'S OBJECTION TO MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matters under consideration are: (1) a Motion to Dismiss filed by Dollar Dry Dock Savings Bank (Dollar Dry Dock) for "cause" pursuant to § 1112(a)(1), the cause being the contention of Dollar that the Petition for Relief was filed in "bad faith", (2) an Objection to the Motion to Dismiss filed by Metro North State Bank (Metro) and (3) the Debtor's response to the Motion to Dismiss. The Court has considered the Motion, the Objection and the Response, heard argument of counsel and finds and concludes as follows.

The Debtor is a limited partnership and is the owner of a large office building which is currently occupied by Barnett Bank of Sarasota (Barnett). This lease will expire in 1992 and it appears that Barnett will not renew the lease. Dollar Dry Dock is the largest secured creditor holding a first priority mortgage on the real property, and a perfected security interest in the income from rents and leases of the real property. It is without dispute that the mortgage is in default although Dollar Dry Dock already received substantial adequate protection payments from the Debtor. The property is further encumbered by a second mortgage held by Dollar Dry Dock and Metro hold secured claims collectively in excess of $14,000,000. The Debtor has no significant amount of unsecured debts and these appear to be nothing but debts owed to insiders. This Debtor would be less than candid not to admit that the Petition filed by the Debtor had no purpose other than to stop the mortgagee to enforce its right under the mortgage which was and still is in default. The office complex is basically the Debtor's only asset. The financial woes of this Debtor are alleged to be caused by not only mismanagement, but

actual defalcation by the previous general partner. The property is a valuable income-producing property. If the property is lost, all limited partners will suffer substantial losses.

Based on the foregoing, it is Dollar Dry Dock's contention that this Chapter 11 case was filed for the sole purpose to frustrate its attempt to enforce its valid legitimate contractual right based on the mortgage and note. Accordingly, so contends Dollar Dry Dock, this is a classic bad faith case doomed for dismissal. *See In re Albany Partners*, 749 F.2d 670 (11th Cir.1984); *In re Phoenix Piccadilly*, 849 F.2d 1393 (11th Cir.1988); and *cf, In re Redington Beach*, 91 B.R. 166 (Bkrtcy.M.D.Fla.1988).

It appears that at first blush, and one could readily concede that this case very well appears to be a case doomed and ripe for dismissal for "cause" for bad faith filing. Supportive of this proposition are *In re Landmark Capital Company*, 27 B.R. 273 (Bkrtcy.Ariz.1983) where the debtor filed its Chapter 11 case on the eve of the foreclosure sale after the District Court refused to enjoin the sale of the property. In *Landmark*, the bankruptcy court was quick to point out that while the filing of a Chapter 11 petition on the eve of foreclosure is not per se an absolute proof of lack of "good faith" of the debtor, it is equally true that the court shall consider the totality of the circumstances, especially the lack of a meaningful number of unsecured creditors. The bankruptcy court in *Landmark* noted that:

> The sole purpose of commencing proceedings was to forestall and thwart North Central's exercise of its power of enforcement under its deed of trust;

> There were no substantial unsecured creditors other than those obligations owed to Landmark's architect, interior designer, accountant and possibly Gabriel Schwartz & Co., a professional hired by the debtor;

> The matter was in effect nothing more than a two-party dispute between Landmark and North Central which should have been settled outside of the jurisdiction of the bankruptcy court; and

The conduct of Landmark's principals in utilizing the District Court action for the purpose of unilaterally securing delay on the eve of the foreclosure sale, and filing of the Chapter 11 case after a District Court Judge refused to enjoin the sale was an attempt to use the bankruptcy court for an improper purpose.

In none of these cases did the courts consider the impact of the Bankruptcy Code on the previously existing rehabilitative provisions of the Act of 1898, Chapter X, XI and XII. The Code fused the previous relief Chapters X, XI and XII into one single relief chapter, Chapter 11. This fusion did facially eliminate the old Chapter XII, a Chapter specifically designed to deal with real property arrangements. However, it is clear that under the pre-Code law, real property arrangements invariably involved a debtor with one single asset which was either heading for foreclosure or was already involved in a foreclosure. Notwithstanding, it was clear that Congress by enacting Chapter XII intended to furnish an opportunity to owners of distressed real estate projects to obtain relief under the provisions of Chapter XII of the Act of 1898. *See In re Helmwood Apartments*, 2 BCD 1151 (Bkrtcy.N.D.Ga.1976); *In re Perimeter Park Investment Associates, Ltd.*, 697 F.2d 945 (11th Cir.1983); *In re Marietta Cobb Apartments Co.*, 3 BCD 720 (Bkrtcy.S.D.N.Y.1977); *In re Samoset Associates*, 10 CBC 515 (Bkrtcy.Me.1976); *In re Pinegate Associates Ltd.*, 2 BCD 1478 (Bkrtcy.N.D.Ga.1976); *In re Colonial Realty Investment Co.*, 516 F.2d 154 (1st Cir.1975).

Based on the foregoing, one must question whether or not Congress by fusing the pre-Code relief chapters into one single chapter, eliminating Chapter XII, intended to deprive entities with one single distressed real estate of any relief in the bankruptcy courts. It needs no elaborate discussion or citation of authorities that this could not have possibly been the intent of Congress. There is still room for debtors with a single real estate asset in the bankruptcy court; first, to receive protection in the bankruptcy court and, ultimate-

ly, to achieve rehabilitation under the provisions of the new Chapter 11. The ultimate test is still as it was under the pre-Code law: first, whether there is a "real need" of reorganization and, second, the debtor demonstrates an ability to effectuate a reorganization without inordinate delay. *Breeding Motor Freight Lines, Inc. v. Reconstruction Finance Corp.*, 172 F.2d 416 (10th Cir.1949), *cert. denied* 338 U.S. 814, 70 S.Ct. 54, 94 L.Ed.2d 1493 (1949); *Fidelity Assurance Assoc. v. Sims*, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943); *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740, 16 BCD 1369, 17 CBC 2d 1368 (1988).

In sum, when a Chapter 11 case of a debtor with one single asset which is sought to be dismissed for "bad faith" the court must consider all circumstances surrounding the case and none of the traditionally recognized elements of "bad faith" are controlling. *See In the Matter of Little Creek Development Company*, 779 F.2d 1068, 1073 (5th Cir.1986). The Court must always make a determination of the absence of "good faith" based on a case-by-case basis, considering all facts and circumstances of the particular case.

In this case it is clear that the property involved is a valuable piece of real estate and that the financial distress of this particular Debtor was brought on by mismanagement and that there exists an opportunity of rehabilitation for this Debtor.

For these reasons, this Court is of the considered opinion that this Debtor deserves and should be given an opportunity to proceed forthwith to achieve rehabilitation.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that:

1. Dollar Dry Dock Savings Bank's Motion to Dismiss be, and the same is hereby, denied. This denial is without prejudice to Dollar Dry Dock to renew the Motion if the Debtor fails to submit and file with the Court on or before May 15, 1989, a Disclosure Statement and Plan of Reorganization.

DONE AND ORDERED.