**In re PRINCE MANOR APARTMENTS, LTD., Debtor.**

**Bankruptcy No. 89–07014.**

United States Bankruptcy Court, N.D. Florida, Tallahassee Division.

July 11, 1989.

Mark Freund, Tallahassee, Fla., for plaintiff.

Francis Cobb, Tampa, Fla., for debtor.

## MEMORANDUM OPINION ON MOTION TO DISMISS

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

Sun Savings and Loan Association (Sun), a secured creditor, has moved the Court for an order dismissing this Chapter 11 bankruptcy as a bad faith filing. The Debtor responds that the petition was filed in good faith, and with a genuine intent to reorganize. The Court conducted an evidentiary hearing on May 12, 1989.

Section 1112(b) of the Bankruptcy Code permits a Chapter 11 petition to be dismissed for cause if the petition was filed in bad faith. *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988); *In re Natural Land Corp.,* 825 F.2d 296 (11th Cir. 1987); *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir.1984). Courts have historically required actions under the Bankruptcy Code be maintained in good faith. *In re Victory Construction Co., Inc.,* 9 B.R. 549 (Bkrtcy.C.D.Cal.1981), *mod. on other grounds,* 9 B.R. 570 (Bkrtcy.C.D.Cal. 1981), *vac. as moot,* 37 B.R. 222 (9th Cir. BAP 1984).

Section 1112, authorizes the Court to utilize its "equity powers to prevent abuse of bankruptcy jurisdiction and the reorganization process." *In re Schlangen,* 91 B.R. 834 (Bkrtcy.N.D.Ill.1988).

> The Court's duty as vigilante against illegitimate use of the Bankruptcy Code must be balanced against the policy of open access to the bankruptcy process.... Therefore, the Court must be careful not to deny the protection of the Bankruptcy Code to a Debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest bad faith.

*Id.,* at 837 (citations omitted).

Filing bankruptcy "on the eve of foreclosure is not per se an absolute proof of lack of good faith of the Debtor...." *In re Krilich,* 87 B.R. 178, 182 (Bkrtcy.M.D. Fla.1988). The court must make determinations of bad faith on a case by case basis. *Id.,* at 182. As explained in *In re Little Creek Development,* 779 F.2d 1068, 1072 (5th Cir.1986):

> Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith in proceedings based on Sections 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum.

Although there is no fixed test for determining whether a petition is filed in good faith, the Eleventh Circuit has described a variety of circumstances a court may consider in deciding whether to dismiss a debtor's case as a bad faith filing. These are:

1. the debtor has only one asset ... in which it does not hold legal title;

2. the debtor has few unsecured creditors whose claims are small in relation to the claim of the secured creditors;

3. the debtor has few employees;

4. the property is the subject of a foreclosure action as a result of arrearages on the debt;

5. the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and

6. the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*In re Phoenix Piccadilly,* 849 F.2d 1393 at 1394–95 (11th Cir.1988) (affirming the bankruptcy court's dismissal based on a finding of bad faith).

No single factor compels a finding of bad faith, nor are the factors listed in the decisions exhaustive. A court should consider any evidence which indicates "an intent to abuse the judicial process and the

purposes of the reorganization provisions". *In re Albany Partners, Ltd.*, 749 F.2d at 674. Ultimately, the determination must be made on a case by case basis.

■ The Debtor's principal asset is an apartment complex located in Tallahassee, Florida, and subject to a foreclosure judgment entered in December, 1988, in favor of Sun. The property is encumbered by two mortgages in an aggregate amount of approximately $2.5 million.[1] The Debtor's last monthly mortgage payment to Sun was in April, 1988.

The Debtor's Chapter 11 petition, filed on January 11, 1989, stayed the foreclosure sale scheduled for January 23, 1989. Although the Debtor lists secured debts of $2.5 million, the Debtor has unsecured debts of less than $800.00. The only other assets listed are approximately $38,000 in cash and deposits, and furniture and equipment valued at approximately $6,000. The Debtor has few, if any, employees.[2]

While the Debtor argues the value of the apartment complex exceeds the secured debt, and it will be able to reorganize if given an opportunity to restructure its secured debt, the property is incapable of generating sufficient income for the payment of debt service and the substantial costs of renovation needed at this apartment complex.[3] The Debtor's plan of reorganization,[4] filed in open court at the hearing on the motion to dismiss, proposes to pay operating expenses, debt service, taxes and payments to unsecured creditors from rental income. Although it appears there may be sufficient income to fund the plan if the Debtors projections prove to be accurate, the Debtor has failed to include a reserve to cover the necessary capital improvement costs. In light of the Debtor's operating history, we cannot place much

faith in the optimistic projections offered by this Debtor. Furthermore, the "possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith." *Phoenix Piccadilly, supra*, 849 F.2d at 1395.

The Debtor's representative, H. Jay Mottice, testified he has been attempting to reorganize since mid–1987, without success. Mr. Mottice described his unsuccessful efforts to obtain a new general partner with access to large enough financial institutions to restructure the limited partnership debt. Since the tax reform provisions of 1986, the limited partnership structure no longer provides tax benefits to encourage additional investment by the limited partners.

Several of the limited partners appeared at the hearing to support the efforts of the Debtor. Success of a reorganization would obviously be the only means for them to retain any interest in the complex. They stand to lose their investments if the case is dismissed and the foreclosure completed. However, this was a risk from the outset when they decided to use this type of investment vehicle. It is well known that this type of investment was very popular with high income individuals during the 1970's and early 1980's when inflation and tax brackets were high and capital gains taxes were low. By investing in real estate syndicates, these individuals could offset some of their regular income with large paper losses generated by the operation of the properties purchased with their investments. The operational losses normally were generated by depreciation of the assets while hopefully, cash flow remained positive. Thus, the investors realized substantial tax savings from their investment. At the same time, it was anticipated that the property would appreciate in value due

---

1. The first mortgage to Sun in the amount of $1.9 million and a second mortgage to Secured Note Income Fund (Income Fund) in the approximate amount of $650,000.

2. The Debtor's representative, H. Jay Mottice, testified the Debtor employed four persons. Mr. Mottice testified the Debtor's general partner, Mottice & Associates, Inc., is the actual employer and advances the salaries to these

employees. The Debtor reimburses Mottice & Associates, Inc. for the employment expenses.

3. Dan Isaacs, a real estate manager experienced in apartment complexes such as the Debtor, testified several hundred thousand dollars is needed for deferred maintenance costs.

4. No disclosure statement was filed with the plan of reorganization.

to inflation and then be sold at a profit. Much of the profit would be taxed as a capital gain, at a much lower rate than the investors' regular income.

All of this fell apart during the 1980's with the tax reform and with the slowing of inflation. The lowering of tax rates and the elimination of favorable treatment for capital gains virtually eliminated the advantages for the wealthy. Also, the ability to use losses from passive investments such as this to offset other income was eliminated. In sum, all of the tax benefits, and thus the primary purpose for this type of investment, evaporated. With the loss of the tax benefits attributable to this type of syndication, the marketability of the property and its value have declined, making it difficult for the investors to recoup the principal of their investments through sale. Now they seek to drastically alter the rights of the secured lenders in order to salvage what began as a high-risk investment. This desire is not a sufficient reason to allow this case to continue.

Considering the evidence as a whole, the Debtor has no realistic possibility for successful reorganization. The apartment complex has not met its expenses since 1983. The rental market in the Tallahassee area declined between 1984 and 1986, causing a cash flow problem and creating a backlog of interior and exterior deferred maintenance. The Debtor's plan has failed to provide for the inevitable maintenance costs.

Given the circumstances of the present case, the Court finds that the Debtor filed the petition for reorganization in bad faith, for the principal purpose of delaying legitimate efforts of the creditor to enforce its rights, and without *any* realistic possibility of rehabilitation. The timing of the Debtor's bankruptcy filing clearly evinces "an intent to abuse the judicial process and the purpose of the reorganization provisions" and accordingly, the case will be dismissed. *In re Albany Partners, Ltd., supra.*

Sun has also filed a Motion to Sequester Cash Collateral. Because the motion to dismiss is granted, Sun's motion as to the cash collateral is denied as moot.

A separate order will be entered in accordance with this memorandum opinion.

ORDERED.