In re **BERKSHIRE MANOR APART-MENTS, LTD.,** Debtor.

In re **CHATEAU de VILLE APART-MENTS, LTD.,** Debtor.

Bankruptcy Nos. 88–07309, 88–07311.

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

July 11, 1989.

**418**

Mark Freund, Tallahassee, Fla., for Talla, Ltd.

Francis Cobb, Tampa, Fla., for debtors.

## MEMORANDUM OPINION GRANTING MOTION TO DISMISS

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

These cases involve similar Debtors and common questions of law and fact. The cases will be consolidated for the purposes of this opinion.

Tallahassee Limited Partnership (TLP), a secured creditor of both Debtors, has moved the Court for an order dismissing these Chapter 11 bankruptcies as "bad faith" filings. The Debtors respond that the petitions were filed in good faith, and with a genuine intent to reorganize. The Court conducted an evidentiary hearing on May 12, 1989.

Section 1112(b) of the Bankruptcy Code permits a Chapter 11 petition to be dismissed if the petition was filed in bad faith. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988); *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984). Courts have historically required actions under the Bankruptcy Code be maintained in good faith. *In re Victory Construction Co., Inc.*, 9 B.R. 549 (Bkrtcy. C.D.Cal.1981), *mod. on other grounds*, 9 B.R. 570 (Bkrtcy.C.D.Cal.1981), *vac. as moot*, 37 B.R. 222 (9th Cir. BAP 1984).

Section 1112, authorizes the Court to utilize its "equity powers to prevent abuse of bankruptcy jurisdiction and the reorganiza-

tion process." *In re Schlangen*, 91 B.R. 834 (Bkrtcy.N.D.Ill.1988).

> The Court's duty as vigilante against illegitimate use of the Bankruptcy Code must be balanced against the policy of open access to the bankruptcy process.... Therefore, the Court must be careful not to deny the protection of the Bankruptcy Code to a Debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest bad faith.

*Id.*, at 837 (citations omitted).

Filing bankruptcy "on the eve of foreclosure is not per se an absolute proof of lack of good faith of the Debtor...." *In re Krilich*, 87 B.R. 178, 182 (Bkrtcy.M.D. Fla.1988). The Court must make determinations of bad faith on a case by case basis, considering the totality of the circumstances. *Id.*, at 182. As explained in *In re Little Creek Development*, 779 F.2d 1068, 1072 (5th Cir.1986):

> Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith in proceedings based on Sections 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum.

Although there is no fixed test for determining whether a petition is filed in good faith, the Eleventh Circuit has described a variety of circumstances a court may consider in deciding whether to dismiss a debtor's case as a bad faith filing. These are:

1. the debtor has only one asset ... in which it does not hold legal title;

2. the debtor has few unsecured creditors whose claims are small in relation to the claim of the secured creditors;

3. the debtor has few employees;

4. the property is the subject of a foreclosure action as a result of arrearages on the debt;

5. the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and

6. the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*In re Phoenix Piccadilly*, 849 F.2d 1393 at 1394–95 (11th Cir.1988) (affirming the bankruptcy court's dismissal based on a finding of bad faith).

■ No single factor compels a finding of bad faith, nor are the factors listed in the decisions exhaustive. A court should consider any evidence which indicates "an intent to abuse the judicial process and the purposes of the reorganization provisions". *In re Albany Partners, Ltd.*, 749 F.2d at 674. Ultimately, the determination must be made on a case by case basis.

■ The Debtors' principal assets are apartment complexes located in Tallahassee, Florida, which are the subject of pending foreclosure and ejectment suits by the secured creditors. The Debtors' interests in the apartment complexes arise from four agreements between the Debtors and TLP: a ground lease, installment agreement for deed, an assignment of leases and rents, and a security agreement. In September, 1988, Guaranty Federal Savings and Loan Association (Guaranty) sued to foreclose its first mortgage on the apartment complexes. TLP, as holder of the wrap around mortgages,[1] was joined in the suits. TLP filed an answer to foreclosure, and a cross-complaint against each Debtor for ejectment, foreclosure of the installment agreement for deed and security agreement, and enforcement of the assignment of leases and rents. The Debtors' last monthly payment to TLP was in May, 1988. The Debtors refuse to vacate the apartment complexes and continue to collect the rental income.

The Debtors filed their Chapter 11 petitions on December 2, 1988, the day before a continued state court hearing on Guaranty's motion to appoint a receiver in both cases and TLP's motion for possession of the apartment complexes and for an injunction to prevent the Debtors from collecting rents.[2] The bankruptcies stayed any further action in the state court suits. Debtor Berkshire Manor listed secured debt of $2.9 million, and unsecured debt of less than $1200.00.[3] The only other assets listed are approximately $8,000 in cash and deposits, and furniture and equipment valued at approximately $10,000 (in which the Debtor only has a 60% interest[4]). Berkshire Manor has few, if any, employees.[5]

Chateau de Ville listed secured debt of $1.9 million, and unsecured debt of less

---

**1.** The Berkshire Manor complex is encumbered by two mortgages securing promissory notes in the aggregate amount of $2.3 million. TLP holds a wrap around mortgage in the amount of $2.9 million, which encompasses the first and second mortgages. The Chateau de Ville complex is encumbered by two mortgages securing promissory notes in the aggregate amount of $1.6 million. TLP holds a wrap around mortgage in the amount of 1.9 million, which encompasses the first and second mortgages.

**2.** TLP's motions for possession of the property and for an injunction to prevent the Debtors from collecting rents was scheduled with the hearing on Guaranty's motions to appoint a receiver on Thursday, December 1, 1988, at 5:00 p.m. The hearing could not be concluded that evening, and was continued until the next Monday, December 5, 1988, at 7:00 a.m. The Debt-

ors' bankruptcy petitions were filed on Friday, December 2, 1988, at 4:59 p.m.

**3.** Developer's Realty is listed on the Berkshire Manor schedules as a secured creditor in the amount of $39,500. The testimony indicated it may actually be an unsecured creditor in that amount. In either case, the unsecured debt is a relatively minor part of the total indebtedness.

**4.** Chateau de Ville owns 40% of the furniture and equipment.

**5.** Berkshire Manor's representative, H. Jay Mottice, testified the Debtor employed four persons. These same people are also employed by the Chateau de Ville Apartments. The Debtor's general partner, Mottice & Associates, Inc., is the actual employer and advances the salaries to these employees. The Debtor reimburses Mottice & Associates, Inc., for the employment expenses.

than $4100.00.[6] The only other assets listed are approximately $7,000 in cash and deposits, and furniture and equipment valued at approximately $10,000 (in which Chateau de Ville has only a 40% interest[7]). Chateau has few, if any, employees.[8]

The Debtors argue the value of the apartment complexes exceeds the secured debt, and they will be able to reorganize if given an opportunity to restructure the secured debt.[9] However, it is clear the properties are incapable of generating sufficient income. The Debtors' monthly operating reports show there is not sufficient income to pay operating expenses, debt service, taxes, and the substantial costs of deferred maintenance needed at both apartment complexes.[10] Berkshire Manor's operating report for the month ending April 30, 1989, showed income of approximately $52,000, operating expenses of approximately $21,500, leaving a balance of approximately $30,500 for debt service. After the monthly debt service payment of $30,750.72, there is no reserve for maintenance costs. Chateau de Ville's operating report for the month ending April 30, 1989, showed income of approximately $35,400.00, operating expenses of $14,400.00, leaving a balanace of approximately $21,000 for debt service. After the monthly payment of $20,000 to TLP, there is virtually nothing left for payment of maintenance costs.

The Debtor's representative, H. Jay Mottice, testified he has been attempting to reorganize since mid–1987. Mr. Mottice described his unsuccessful efforts to obtain a new general partner with access to financial institutions large enough to restructure the limited partnership debt. Since the tax reform provisions of 1986, the limited partnership structure no longer provides tax benefits to encourage additional investment by the limited partners. *See, In re Prince Manor Apartments, Ltd.,* 104 B.R. 414 (N.D.Fla.1989). The two complexes have not met their expenses since 1983. The rental market declined from 1984 to 1986, causing a cash flow problem, and creating a backlog of deferred maintenance items. The hopelessness of the Debtors' financial position is underscored by the failure to propose plans of reorganization to date. Considering the evidence as a whole, these Debtors have no realistic possibility for successful reorganization.

Given the circumstances of the each case, the Court finds that the Debtors filed their petitions for reorganization in bad faith, for the principal purpose of delaying legitimate efforts of the creditors to enforce their rights, and without *any* realistic possibility of rehabilitation. While these Debtors may subjectively have a genuine desire to reorganize, the facts of these cases demonstrate that any reorganization is highly unlikely. Instead of actively marketing the property or seeking new capital for it, the Debtors have merely attempted unsuccessfully to find another entity to take over the responsibilities of general partner. They have used the automatic stay simply to buy time while using funds that should have been going to pay on the secured debt to make overdue repairs on the property. The timing of the Debtors' bankruptcy filings clearly evidences "an intent to abuse the judicial process and the purpose of the reorganization provisions" and accordingly, these cases will be dismissed. *In re Albany Partners, Ltd., supra.*

---

6. This amount includes approximately $3200 owed to the City of Tallahassee for utilities. The utility bill was paid after the bankruptcy filing, leaving approximately $900 in unsecured debt.

7. Berkshire Manor owns 60% of the furniture and equipment.

8. See note 5, *supra.*

9. The Eleventh Circuit in *In re Phoenix Piccadilly, supra,* 849 F.2d 1393 at 1395 rejected the debtor's argument that a case cannot be dismissed for bad faith if there is equity in the property indicating the potential for reorganization, explaining "[t]he possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith." *Id.* at 1395.

10. Mr. Terry Town, a certified property manager experienced in apartment complex management, testified the Berkshire Manor complex needed approximately $400,000 in maintenance.

The Court also has under submission TLP's earlier motions to determine that property scheduled by the Debtor is not property of the estate. Because the Court grants the motion to dismiss, TLP's earlier motions are denied as moot.

A separate order will be entered in accordance with this memorandum opinion.

ORDERED.