**In re ONE FOURTH STREET NORTH, LTD., Debtor.**

**Bankruptcy No. 89-2828-8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 20, 1989.

See also, Bkrtcy., 103 B.R. 320.

Don M. Stichter, Tampa, Fla., for Debtor.

John Yanchunis, St. Petersburg, Fla., for Florida Federal Sav. Bank.

United States Trustee's Office c/o Assistant U.S. Trustee, Lynne England, Tampa, Fla.

ORDER ON FLORIDA FEDERAL SAVINGS BANK f/k/a FLORIDA SAVINGS & LOAN ASSOCIATION'S MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 case and the matter under consideration is a Motion to Dismiss the case filed by Florida Federal Savings Bank, f/k/a Florida Savings & Loan Association (Florida Federal). Florida Federal seeks dismissal of the case for cause pursuant to § 1112 of the Bankruptcy Code, alleging that the Petition was filed in bad faith and that the Debtor is incapable of effectuating a plan of reorganization.

The facts relevant to the disposition of this Motion are as follows:

Florida Federal obtained title through foreclosure to a ten-story office building located at One Fourth Street North, St. Petersburg, Florida. On December 29, 1984, the bank sold the property to the Debtor. In order to further entice the Debtor to purchase the building, Florida Federal agreed to finance the transaction and to become the anchor tenant in the renovated structure.

One Fourth Street North Management, Inc., as sole general partner of the Debtor, executed and delivered a promissory note in favor of Florida Federal in the original principal amount of $6,800,000.00, together with a mortgage securing the payment of the note to Florida Federal. The mortgage was recorded on December 29, 1984, in the public records of Pinellas County, Florida. The Debtor also executed and delivered an assignment of rents, leases, contracts, accounts receivable, accounts and deposit accounts to Florida Federal granting a priority security interest in all rents and incomes derived and generated by the property en-

cumbered by the mortgage. Florida Federal perfected its rights under the assignment prior to the commencement of this bankruptcy case by making demand upon the Debtor pursuant to *Fla.Stat.* § 697.07.

On April 2, 1986, the Debtor borrowed an additional $1,445,000.00 from Florida Federal for rehabilitation of the building, resulting in a consolidated principal indebtedness of $8,245,000.00, evidenced by a note, mortgage modification and consolidation agreement and notices of future advance. The Debtor defaulted in payment of the note by failing to pay the payments due on November 1, 1988, and all subsequent payments. The property described in the mortgage is the sole asset of the Debtor.

Florida Federal presented expert testimony to prove that an effective reorganization would be impossible under current economic conditions due to the weak office rental market in downtown St. Petersburg. The experts stated that the office vacancy rate stands at 28% and that the market will continue to be soft for the next few years. Even though the vacancy rate is high, testimony was presented to indicate that construction has commenced on 333,000 square feet of new office space in downtown St. Petersburg. Thus, while it appears according to Florida Federal's expert witnesses that the office rental market seems to have a dismal future, notwithstanding investors are willing to invest large amounts to fund the construction of new office space.

It is undisputed that the current income generated by the subject property is insufficient to satisfy the debt service obligations required by the mortgage held by Florida Federal. At this point, the vacancy rate of the building in question is 20%. While no evidence was presented by either side as to the breakeven point, it is intimated that the Debtor could generate sufficient income to repay its indebtedness with a lower vacancy rate. The record supports the conclusion that the Debtor has shown significant progress toward filling vacancies over the past four years, and, although some of its success may be due to providing substantial incentives in order to entice tenants to move into the building, the suc-cess achieved has far outpaced the growth of the marketplace since 1985. While it is true that, in the past, the office market in downtown St. Petersburg has been depressed, it is not unreasonable to infer from the trends that economic conditions are improving.

The Motion appears to focus on the alleged lack of good faith of the Debtor in filing the Petition and its ability to effectuate a plan of reorganization. As a general rule, dismissal based upon bad faith filing is sought when the case involves a debtor with a single asset, no meaningful unsecured debts, and a controversy between two parties, i.e., the secured creditor and the debtor. *In re Krilich,* 87 B.R. 178 (Bankr.M.D.Fla.1988); *In the Matter of South County Realty, Inc., II,* 69 B.R. 611 (Bankr.M.D.Fla.1987); *In the Matter of Welwood Corporation,* 60 B.R. 319 (Bankr. M.D.Fla.1986); *In re American Property Corporation,* 44 B.R. 180 (M.D.Fla.1984).

Under Chapter XII of the Bankruptcy Act of 1898, it was proper for a debtor with one single asset involved in a foreclosure proceeding which was about to be concluded to file for relief for the sole purpose of readjusting the real estate obligation involved in the foreclosure, even if the debtor had no unsecured debts. *In re Helmwood Apts.,* 2 B.C.D. 1151 (Bankr.N.D.Ga.1976); *In re Perimeter Park Investment Associates, Ltd.,* 697 F.2d 945 (11th Cir.1983); *In re Marietta Cobb Apts. Co.,* 3 B.C.D. 720 (Bankr.S.D.N.Y.1977); *In re Samoset Associates,* 10 C.B.C. 515 (Bankr.Me.1976); *In re Pinegate Associates, Ltd.,* 2 B.C.D. 1478 (Bankr.N.D.Ga.1976); *In re Colonial Realty Investment Co.,* 516 F.2d 154 (1st Cir. 1975).

Congress expressly fused Chapters X, XI and XII of the Bankruptcy Act of 1898, including the previous real property arrangement, into the current Chapter 11 of the Bankruptcy Code. Thus, the fact that a Chapter 11 case involves a single asset debtor involved in a foreclosure proceeding does not in and of itself indicate a bad faith filing. Although it is clear that they are not controlling in a single-asset real estate case, the factors enumerated in *In re Little*

*Creek Development Co.*, 779 F.2d 1068 (5th Cir.1986) should be considered in determining whether a case is ripe for dismissal for bad faith filing. There are obviously some similarities between the case at bar and *Little Creek Development.* The Debtor has only one asset, which is encumbered by the liens of Florida Federal. The Debtor in this case has very few employees other than the principals and few unsecured creditors with relatively small claims. The property was in the process of a foreclosure action by Florida Federal.

However, the distinctions between this case and *Little Creek Development* outweigh the similarities. The real estate owned by the Debtor is neither vacant nor unimproved land, but a ten-story office building. Consequently, the case is distinguishable from those cases in which the debtor's sole asset is simply an unimproved parcel of real estate which produces no income and which is held simply on the speculation that it can be sold at some unspecified date as market conditions permit.

Further, the Debtor operates a business in the conventional sense of the word. The business, which is an ongoing concern, consists of the ownership, lease and management of the office building owned by the Debtor. The building project was undertaken as a rehabilitation and development project. The loan from Florida Federal involved an acquisition and development objective. Neither the Debtor nor Florida Federal anticipated any cash throwoff for the first four to five years of the project. Unfortunately for all parties involved, the Debtor's timetable for profitability was adversely affected by a softening office rental market. However, the Debtor has made significant progress in leasing up its space despite market conditions. It is arguable that the available cash flow could sustain a plan of reorganization.

In any event, the factors set forth in *Little Creek* are merely a guide and do not constitute a "bright-line test." *See, In re Natural Land Corporation,* 84 B.R. 815 (Bankr.M.D.Fla.1988) and *In re Can–Alta Properties, Ltd.,* 87 B.R. 89 (9th Cir.1988).

An analysis of the decisions of the Eleventh Circuit and the other bankruptcy courts in the Middle district of Florida reveals that there is nothing inherently improper in a single asset debtor filing a Chapter 11 Petition for Reorganization, even shortly before or after a foreclosure proceeding has commenced. *See, e.g., In re North Redington Beach Associates, Ltd.,* 91 B.R. 166 (Bankr.M.D.Fla.1988); *In the Matter of Martin,* 51 B.R. 490 (Bankr. M.D.Fla.1985); *In re Krilich,* 87 B.R. 178 (Bankr.M.D.Fla.1988). Rather, the key considerations to the courts' decisions in this area are (1) the debtor's intent or motive for filing the petition; (2) the extent to which the debtor is an ongoing concern; and, (3) the ability of the debtor to reorganize.

Although it would be a waste of judicial resources to permit a debtor who is clearly incapable of reorganization to go through the futile motions and to permit the Debtor to stall for time and hide under the protective umbrella of this Court, the Debtor in this case should be given the opportunity to file a plan and disclosure statement and attempt to achieve reorganization and proceed to confirmation. This does not mean, however, that the Debtor should be given an extended use of the protection of the automatic stay. As noted by the Fifth Circuit in *In re Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363 (5th Cir. 1987), the creditors are not without protection and § 1112(b)(1) of the Bankruptcy Code warrants a dismissal for continuing losses and an absence of a reasonable likelihood of rehabilitation or inability to effectuate a plan under § 1121 or failure to propose a plan within the time limits set by the Court.

The 120–day exclusive period for filing of a plan of reorganization by the Debtor ended on August 25, 1989. It is imperative to put this Chapter 11 case on a fast track and permit the Debtor opportunity to receive confirmation. In order to expedite this case, it is appropriate to enter an order requiring the disclosure statement and plan to be filed by the Debtor within forty-five (45) days of the entry of this Order.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion to Dismiss be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that the Debtor shall file with this Court a disclosure statement and plan of reorganization within forty-five (45) days of the date of entry of this Order. If the disclosure statement and plan of reorganization are not filed by this time, this Court shall consider entry of an Order of Dismissal without further hearing.