## In re MEADOWOOD CLUB APTS., LTD., Debtor.

### Bankruptcy No. 91–8654–9P1.

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

July 22, 1992.

Martin L. Sandler, Jr., Miami, Fla., for debtor.

Jose I. Astigarraga, Miami, Fla., for RTC.

## ORDER ON MOTION TO DISMISS OR CONVERT

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing with notice to all parties of interest upon the Renewed Motion of Resolution Trust Corporation (RTC), as Receiver of Savers Federal Savings & Loan Association (Savers) to Convert or Dismiss Chapter 11 Case, alleging that this case was filed and is being maintained in bad faith and not in accordance with the underlying principles of the Bankruptcy Code. The Court has heard the arguments and representations of counsel for RTC and for the Debtor, reviewed the record and considered the motion. For the reasons set forth below, this Court grants the motion and orders that this Chapter 11 case shall be dismissed for the following reasons.

The material facts are not in genuine dispute. The Debtor owns essentially one single asset, a 288-unit apartment complex described as a low-income housing project in Naples, Florida. The construction of the project was financed through the issuance of tax-free bonds, issued by the Housing Authority of Collier County. The bonds were secured by a letter of credit issued by Savers. The bond indenture trustee draws under the letter of credit to fund the periodic payments due under bonds. Pursuant to a letter of credit reimbursement agreement with Savers, the Debtor agreed to reimburse Savers for such payments. Both the bonds and the letter of credit reimbursement agreement are secured by mortgages on the property. Savers has failed, and the RTC, as Receiver, has succeeded to Savers' interests in the mortgage loan in question. The Debtor admits that as of the date of filing, and the balance due on the loan is $9 million plus interest.

On July 3, 1991, the Debtor filed a Petition for Relief under Chapter 11 of the Bankruptcy Code. On August 12, 1991, the Court entered an Order To Show Cause why the case should not be dismissed for Debtor's failure to file its schedules. On October 20, 1991, the United States Trustee filed a Motion to Dismiss or Convert for failure to file Debtor-in-Possession reports and to remit fees. On November 8, 1991, the RTC filed a Motion For Relief From Stay, and a week later, it moved to dismiss the case as a bad faith filing. On December 13, 1991, this Court denied both the U.S. Trustee's and the RTC's Motions to Dismiss, and directed the Debtor to file its proposed Plan of Reorganization and Disclosure Statement by December 31, 1991.

Both the RTC and the U.S. Trustee objected to the Debtor's proposed Plan and Disclosure Statement filed December 31, 1991. On March 3, 1992, the U.S. Trustee once again moved to dismiss or convert the case, on the grounds that the Debtor had once again failed to file its monthly operating reports and remit fees. On March 6, 1992, the Court disapproved the Debtor's Disclosure Statement, and the Debtor filed an Amended Disclosure Statement and Plan. The RTC has now filed a Renewed Motion to Convert or Dismiss Chapter 11 Case, which is the matter currently under consideration.

Under the Debtor's proposed Amended Plan and Disclosure Statement, the Debtor acknowledges that the apartment complex has a value of at least $7 million. The Plan proposes to pay the RTC $7 million in nine months, failing which the Debtor shall surrender the property to the RTC. During those nine months, the Debtor proposes to pay RTC toward the mortgage any net gain derived from its cash flow. The RTC would receive nothing for its approximately $2 million unsecured deficiency claim.

During the next nine months, the Debtor projects net income from the project before debt service of approximately $329,000. See Exhibit "A" to Debtor's Amended Disclosure Statement. Under § 1129(b)(2)(A), a non-consensual plan must provide the secured creditor with at least the present value of its allowed secured claim or the realization of the indubitable equivalent of its claim. Even assuming the validity of the Debtor's own valuation of $7 million, no payments of the principal during the first nine months, at a rate of 8% (below the

existing contract rate), the Debtor will experience a shortfall of more than $90,000. (Seven Million Dollars at 8% per annum equates to approximately $46,700 per month, which for nine months equals $420,-000. With net income projected at $329,-000, the shortfall is $91,000.) The Debtor itself concedes that the current proposed plan is unconfirmable without the RTC's consent, and this Court is highly doubtful that the RTC would ever consent to this type of Plan.

This Court has considered often the doctrine of dismissal for bad faith in the past. *In re Miracle Church of God in Christ* 119 B.R. 308 (Bankr.M.D.Fla.1990); *In re Sarasota Plaza Associates Limited Partnership*, 102 B.R. 257 (Bankr.M.D.Fla. 1989); *In re Tiffany Square Associates, Ltd.*, 104 B.R. 438 (Bankr.M.D.Fla.1989); *In re Krilich*, 87 B.R. 178 (Bankr.M.D.Fla. 1988); *In re American Property Corporation*, 44 B.R. 180 (Bankr.M.D.Fla.1984). Generally,

> in a case where dismissal is sought on the basis of bad faith filing, the case involves a Debtor with a single asset; a Debtor with no meaningful unsecured debts; and the controversy is basically between two parties, i.e., the secured creditor and the Debtor, which controversy has already been almost or completely resolved in a non-bankruptcy forum and where the only thing lacking is the conclusion of that particular proceeding, sale of the only asset of the Debtor at the scheduled foreclosure sale.

*In re Krilich*, 87 B.R. 178, 181 (Bankr. M.D.Fla.1988) (citations omitted).

The Eleventh Circuit Court of Appeals has provided guidance by way of its decision in *In re Phoenix Piccadilly, Limited*, 849 F.2d 1393 (11th Cir.1988). There, the Court noted a multitude of factors bearing on dismissal, including: the Debtor's ownership of basically a single asset; unsecured claims that are not substantial relative to the amount of secured claims; few employees; and the existence of what is essentially a two-party dispute *Id.* at 1394 (citation omitted).

Each of those factors is present in this case. Not only does the Debtor own only this apartment complex, it has only four employees. Its unsecured claims are estimated to total less than $100,000, which relative to the mortgage of $9 million is not significant. Moreover, the present case is nothing more than a two-party dispute between the lender and the Debtor.

The creditor's right to dismissal is not diminished because a foreclosure proceeding or other state court litigation is not pending. Where a bad faith dismissal is sought, "the court must consider all circumstances surrounding the case and *none* of the traditionally recognized elements of 'bad faith' *are controlling*," *In re Sarasota Plaza Associates Limited Partnership*, 102 B.R. 257, 259 (Bankr.M.D.Fla.1989) (emphasis added) (citations omitted). In the end, the Court must focus on whether "there [is] a real need for reorganization,and most importantly, *a realistic ability to achieve one.*" *In re Krilich*, 87 B.R. at 181 (emphasis added). As in *Krilich*, this Court is satisfied that the Debtor is unable to generate sufficient funds to satisfy or even to service the RTC's indebtedness. This case has been pending for more than nine months, and the Debtor concedes that its plan is unconfirmable absent the RTC's consent. No realistic ability to achieve a reorganization exists.

This Court has noted that a debtor's "good intentions" to achieve rehabilitation are not enough. *In re Krilich*, 87 B.R. 178, 181. Additionally, this Court must weigh carefully the harm to be suffered by the creditor from continuing delay. Since the inception of this case, the RTC has been incurring liability under the letter of credit at the rate of more than $60,000 per month. During the nine-month moratorium proposed under the current plan, the property would incur $500,000 in additional out-of-pocket costs and expenses, in addition to the continuing cost of the legal proceedings.

Based on the foregoing, this Court is satisfied that the Motion to Dismiss filed by the RTC is well-taken and there is "cause" which would warrant a dismissal

pursuant to § 1112(b) of the Bankruptcy Code.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the RTC's Renewed Motion to Convert or Dismiss Chapter 11 Case is granted and this Chapter 11 case is hereby dismissed. It is further

ORDERED, ADJUDGED AND DE-CREED that the Court retains jurisdiction over the Debtor to enter all orders necessary to ensure a proper accounting for, and turnover (if any) of, the RTC's cash collateral. It is further

ORDERED, ADJUDGED AND DE-CREED that in light of the Court's ruling granting the RTC's motion, the U.S. Trustee's motion to dismiss or convert is rendered moot. It is further

ORDERED, ADJUDGED AND DE-CREED that the Court having previously granted the RTC's Motion for Rehearing on the Debtor's Motion For Approval Of Leasing And Management Agreement with Leroh, Inc., and the Debtor having represented that upon dismissal of this case such agreement shall terminate, any application by Debtor's property manager for compensation shall be filed in accordance with F.R.B.P. 2016 within ten days of the date of this Order. It is further

ORDERED, ADJUDGED AND DE-CREED that the Debtor shall pay the United States Trustee any outstanding fees due.