In re Joyce J. SCHLANGEN, Debtor.

Bankruptcy No. 86 B 9157.

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 27, 1988.

William J. Stevens, Chicago, Ill., for debtor.

Denyse H. Heffner, Office of the U.S. Trustee, Chicago, Ill., for U.S. Trustee.

Louis R. Schroeder, Jaros, Tittle & O'Toole, Chicago, Ill., for Horizon Federal.

MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

A secured creditor, Horizon Federal Savings Bank, has moved to dismiss this Chapter 11 case "for cause" under 11 U.S.C. § 1112(b). Horizon alleges that the Debt-

---

or's petition was filed in bad faith, solely to frustrate Horizon's efforts to enforce its five mortgage notes, and is being maintained as a litigation tactic in a purely two-party dispute. The United States Trustee supports Horizon's motion to dismiss this case. The Debtor argues that her purposes for filing and maintaining the Chapter 11 case are to rehabilitate her rental real estate business and to liquidate her claims against Horizon for the benefit of her unsecured creditors. The automatic stay was modified after the present motion to dismiss was filed, so that Horizon's foreclosure actions with respect to the Debtor's five properties are proceeding in the state courts. The Debtor's claim against Horizon is the subject of an adversary proceeding now pending in the District Court.

The Court concludes that this case cannot serve the purposes of Chapter 11 because no reorganization of the Debtor's business is possible, nor is the Debtor attempting to liquidate her assets. Rather, the only purpose that can be served by maintaining this case is to preserve federal jurisdiction over a dispute that otherwise would be in the state courts. That is not a sufficient reason for maintaining a Chapter 11 case, and this case will therefore be dismissed.

## FACTS

The Debtor operated a real estate rental, management, consulting and brokerage business with her former husband until late 1981. Their real estate activities included the ownership and management of five properties in Wheeling, Illinois, all of which were financed by Horizon's predecessor, Glenview Guaranty Federal Savings and Loan Association. In November, 1981, Glenview declared all five loans in default. These defaults, which the Debtor claims were improperly declared, apparently precipitated the Debtor's first Chapter 11 petition on January 26, 1982, which she filed jointly with her then husband. On January 5, 1984, the automatic stay was modified to allow Glenview to file its complaints for foreclosure on the Debtor's properties. On April 25, 1984, the Debtor's Chapter 11 case was dismissed on a creditor's motion.

In late 1984, Horizon's predecessor filed five actions in the Circuit Court of Cook County, Illinois to foreclose the five mortgaged properties and proceeded to judgments of foreclosure in all but one of those cases. The Debtor filed motions in the state court foreclosure proceedings to vacate the judgments. Horizon then petitioned the state court for appointment of a receiver, after which the Debtor filed the present Chapter 11 petition on July 12, 1986.

The Debtor then filed an adversary complaint in this Court on August 1, 1986 alleging that Horizon and its predecessor improperly declared defaults on the five mortgage loans and conspired to destroy her real estate business. The complaint seeks damages of $100,000,000 plus costs. The District Court withdrew the reference of that adversary proceeding, and it is now pending in that Court.

In the bankruptcy case, Horizon moved to modify the automatic stay to permit it to complete the pending state court foreclosures. That motion was also withdrawn by the District Court and ultimately granted. Four of the five foreclosure actions have been concluded, and the properties have been sold at judicial sales, subject to the expiration of redemption periods in November and December, 1988. The fifth foreclosure action is still pending, and the Debtor is in possession of the property that is the subject of that action. She is collecting the rental income from that property.

On December 8, 1986, Horizon filed its motion to dismiss, which is presently before the Court. The reference of that motion was also withdrawn by the District Court, which re-referred that motion to this Court in April, 1988. On September 27, 1988, the Court conducted an evidentiary hearing on Horizon's motion to dismiss at which the Debtor testified as to the current state of her real estate business. She testified that she is currently managing only the one property as to which a foreclosure judgment has not been entered. The rents for units in that property are her only current source of income. She is using

that income to pay her personal expenses as well as maintenance and utility costs for the building. She has not paid real estate taxes, insurance premiums, or mortgage payments on this or any of the other properties since the defaults were declared in November, 1981. The Debtor has earned no income since filing the present Chapter 11 petition from real estate brokerage, management or consulting activities. Although she testified that she is currently engaged in several endeavors that may generate income in the near future, she offered no details about any such transaction. She and her attorney made it clear that the bulk of their time and energy in this case is taken up with the litigation in the District and state courts.

On her statement of liabilities, the Debtor lists approximately $36,000 in unsecured debt. One unsecured creditor, with a claim of $10,000, testified to the effect that he is a personal friend of the Debtor, and does not intend to pursue the debt in the bankruptcy proceedings. The only other unsecured claims are those of the Debtor's attorneys in this and her previous Chapter 11 case. One of her prior attorneys appeared in Court to support the Debtor's position, but did not testify. These other unsecured creditors have made no effort to pursue their claims and the Debtor testified that she is current on all her other obligations.

According to her debtor in possession reports (filed in compliance with Bankruptcy Rule X–1007(b)), through August, 1988 the Debtor had received income of about $117,000 and had disbursements of about $118,000. Her reported income includes $10,000 transferred from her credit union, $1,000 from a "vault" and $550 in "cash". She has not filed tax returns for 1986 or 1987 because, according to her testimony, her accountant would not sign the returns.

The Debtor has filed a plan of reorganization. That plan proposes three sources of funds for payments to creditors. One is the Debtor's business. As noted above, in the two years this case has been pending, the only income the Debtor has received is rent on her one remaining property, and that income has been insufficient to cover her disbursements, even though those disbursements do not include insurance, taxes or mortgage payments.

The second proposed source of funds is the refinancing of her remaining building. The Debtor testified that she will be unable to refinance that property until she has successfully defended the Horizon foreclosure action, eliminating Horizon's mortgage. This source of funds therefore depends upon the outcome of that lawsuit in state court.

Third, the Debtor contemplates applying ten percent of any recovery in the adversary proceeding against Horizon, after payment of administrative expenses, to the payment of creditors. The Debtor proposes that she keep the other 90%.

## DISCUSSION

The Bankruptcy Code does not expressly require that a Chapter 11 case be filed or maintained in good faith.[1] Historically, however, courts imposed a good faith standard on the commencement and maintenance of bankruptcy reorganization cases under the prior bankruptcy acts. *In re Victory Construction Co. Inc.*, 9 B.R. 549 (Bankr.C.D.Cal.1981) (discussion of the history of good faith standard), *modified on other grounds* 9 B.R. 570 (Bankr.C.D.Cal. 1981), *vacated as moot* 37 B.R. 222 (B.A.P. 9th Cir.1984). The Bankruptcy Code authorizes the dismissal of a Chapter 11 case "for cause." 11 U.S.C. § 1112(b).[2] The courts have consistently relied on that provision as authorization for the use of their

---

1. The Bankruptcy Code does expressly require that the debtor's plan of reorganization be "proposed *in good faith and not by any means* forbidden by law" as a prerequisite to confirmation of the plan. 11 U.S.C. § 1129(a)(3). The issue here does not concern confirmation.

2. Section 1112(b) provides that the court "may dismiss a case under this chapter ... for cause, including— ...", and then lists ten specific "causes." By using the word "including" Congress made it clear that dismissal under section 1112(b) might be for causes not listed in that section. 11 U.S.C. § 102(3) (rule of construction that " 'including' [is] not limiting").

equity powers to prevent abuse of bankruptcy jurisdiction and the reorganization process. *In re HBA East, Inc.*, 87 B.R. 248, 258–63 (Bankr.E.D.N.Y.1988). The circuit courts have recognized and affirmed the power of bankruptcy courts to dismiss Chapter 11 cases that fail to meet a good faith standard. *See e.g., In re Madison Hotel*, 749 F.2d 410, 425 (7th Cir.1984) (dicta); *In re Natural Land Corporation*, 825 F.2d 296 (11th Cir.1987); *In re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir. 1986).[3]

Chapter 11 was designed to prevent the waste and reduction in asset values that result from unnecessary liquidation. Congress meant to encourage financial restructuring and to reestablish efficient business operations with the goals of permitting greater payments to creditors then could otherwise be made, while also preserving jobs and shareholders' interests. *See e.g., In re Victory Construction Co.*, 9 B.R. at 551–65; H.R.Rep. No. 595, 95th Cong., 1st Sess. 220–21 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, 6179; *In re HBA East, Inc.*, 87 B.R. at 259. The good faith standard is the bankruptcy court's equitable mechanism for assuring that a Chapter 11 case at least has the potential to serve those purposes.

The Court's duty as vigilante against illegitimate use of the Bankruptcy Code must be balanced against the policy of open access to the bankruptcy process. *See, In re Johns–Manville Corp.*, 36 B.R. 727, 735–37 (Bankr.S.D.N.Y.1984). Therefore, the Court must be careful not to deny the protection of the Bankruptcy Code to a Debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest bad faith. *See, In re Clinton Centrifuge, Inc.* 72 B.R. 900, 905 (Bankr.E.D.Pa.1987).

To protect against unwarranted dismissals, the good faith standard should be viewed as objective rather than subjective.

That is, the court's inquiry should primarily focus on the presence or absence of ascertainable, objective factors or "guidelines", rather than the Debtor's subjective intent. *HBA East*, 87 B.R. at 262. The guidelines that are pertinent to this case that have been articulated by other courts include, 1) that the Chapter 11 petition serves as a litigation tactic in essentially a two-party dispute, 2) that the Debtor has few or no unsecured creditors, 3) that there are few debts to non-moving creditors, 4) that the Debtor has previously filed a Chapter 11 petition, 5) that the petition was filed to delay foreclosure of the Debtor's only or primary asset or assets, 6) that the Debtor has no ongoing business, and 7) that there is no possibility of a rehabilitation of the debtor's business. *In re HBA East, Inc.*, 87 B.R. at 259; *In re Clinton Centrifuge, Inc.*, 72 B.R. at 904; *Matter of Grieshop*, 63 B.R. 657 (N.D.Ind.1986). The existence of one of these factors will not obligate the court to dismiss the petition for bad faith. Instead, the facts viewed in their totality must show that the case serves predominately or exclusively illegitimate purposes to warrant dismissal for bad faith. *In re Little Creek Development Co.*, 779 F.2d at 1072.

The Court finds that in this case all of the "guidelines" listed above are present. The Debtor filed her complaint in the adversary proceeding approximately one month after the Chapter 11 petition was filed. The timing of the bankruptcy filing by itself does not indicate that the Debtor intended to use the bankruptcy process to confer federal jurisdiction on the adversary proceeding. The allegations in that complaint, however, arise out of the same transactions and occurrences that gave rise to Horizon's foreclosure actions on the five Wheeling, Illinois properties. The Debtor could have filed the action as a counterclaim in the state court foreclosure actions. Even after the automatic stay was lifted and the foreclosure actions allowed to pro-

---

**3.** Between them, *Victory Construction*, 9 B.R. at 552–70, and *HBA East*, 87 B.R. at 258–63, thoroughly discuss the development and current understanding of the good faith standard, as well as the authorities that support the application of that standard. This opinion will only summarize that analysis and will cite only a few of the cases referred to in those opinions.

ceed in the state courts, the Debtor maintained her closely related claim as a separate proceeding in the federal court, rather than as a counterclaim in the state court. Moreover, it is clear that the litigation of that claim is the principal activity of the Debtor and her lawyer in this case. There would be no basis for federal jurisdiction but for the bankruptcy filing. It therefore appears that one of the purposes for the Debtor's second Chapter 11 filing was to confer federal jurisdiction on what is otherwise a two-party dispute involving issues of state law. That clearly is the primary purpose for maintaining this case now.

Further, foreclosure of the Debtor's properties was postponed by filing the petition. The petition was filed soon after judgment of foreclosure was entered by the state court on four of the Debtor's properties and after Horizon had petitioned the state court for appointment of a receiver. The imminence of final termination of the Debtor's interests in her properties suggests that a significant reason for filing the bankruptcy petition was to reap the benefits of the automatic stay. As the Debtor points out, imposition of the automatic stay as a derivative benefit of a reorganization proceeding is not justification for dismissal due to bad faith. *Matter of Levinsky*, 23 B.R. 210, 221 (Bankr.E.D. N.Y.1982). The stay is a legitimate benefit that allows Debtors time to reorganize and some bargaining power in negotiating with creditors. Filing a Chapter 11 case for the sole purpose of invoking the automatic stay without the ability or intent to reorganize, however, is bad faith. *Matter of Herndon Executive Center, Inc.*, 36 B.R. 803 (Bankr. M.D.Fla.1984); *In re Thirtieth Place, Inc.*, 30 B.R. 503 (B.A.P. 9th Cir.1983).

It is clear that the Debtor sought to confer federal jurisdiction on its lawsuit against Horizon and to invoke the automatic stay when she filed her Chapter 11 petition. These two uses of the bankruptcy process would not compel dismissal of the case for bad faith if the Debtor had other legitimate purposes for her filing. The most obvious legitimate purpose would be the reorganization of the Debtor's real estate business. But the facts do not support the Debtor's claim that she is attempting to reorganize an ongoing business. The Debtor is collecting rent on only one building. She has not paid mortgage, insurance or tax expenses for this building since 1981, about five years before the petition was filed in July, 1986. The rent she collects is used to pay her personal expenses and building maintenance and utility costs, not to develop her real estate business. Four of her five properties have been sold, and there is no evidence that the Debtor will be able to redeem them. Although she testified that she is involved in consulting and brokerage activities, they have generated no income since July, 1986. This is in stark contrast with the Debtor's earlier real estate activities when she and her ex-husband sold over $7 million worth of properties in their first seven months of operations. Most of the Debtor's time and energy, by her testimony, has been spent on investigatory work for the lawsuit against Horizon. The Debtor's plan depends upon her success in the federal and state litigation, not any restructuring of her business or her relationship with creditors. The Court must find that there is no business left to reorganize and that this Chapter 11 case cannot serve the purpose of rehabilitating the Debtor's business.

The Debtor, however, argues that it does not matter whether she has a chance to rehabilitate her business because she is proposing a "liquidating" plan to pay all her creditors. It is correct that a Chapter 11 plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests ..." 11 U.S.C. § 1123(b)(4). Liquidation is therefore a legitimate purpose of a Chapter 11 case, and a case should not be dismissed simply because the Debtor contemplates a liquidating plan. R. Ginsberg, *Bankruptcy*, ¶ 13,104 (1986).

The Debtor, however, is not proposing to sell the property of the estate. Instead, she proposes to pay creditors from three sources: the operation of the Debtor's business, the refinancing of the one property that remains in her possession, and her

 

litigation with Horizon. It is evident from her testimony that her real hope is to prevail on her claim against Horizon. But she is not proposing to sell that claim, only to litigate it to judgment. The Debtor's success in that dispute may provide her with a fund with which to pay debts, but that would be equally true outside Chapter 11.

Moreover, the Debtor does not have substantial unsecured creditors who are pressing for payment. If the Debtor were able to show a desire and a means to reorganize, absence of unsecured creditors alone would not justify dismissal for bad faith. *Levinsky*, 23 B.R. at 220–21. Along with the other badges of bad faith and the absence of an operating business to reorganize, this factor further demonstrates the absence of a legitimate reorganization purpose.

It may well be, as the Debtor argues, that the dismissal of this case will further delay the final resolution of the Debtor's dispute with Horizon. Nevertheless, although efficient disposition of litigation is a desirable goal, use of the bankruptcy court's jurisdiction without some other legitimate link to the bankruptcy process is not proper. Without at least the means and the desire to reorganize, a Debtor may not invoke federal bankruptcy jurisdiction to litigate state court matters. In addition, the Debtor might have avoided this delay by litigating her claim as a counterclaim in the foreclosure cases that were filed four years ago.

Since 1981, the Debtor's business activities have been sparse and she has no substantial unsecured creditors. The Chapter 11 petition was filed in July 1986 to confer federal jurisdiction on what is otherwise a two-party dispute involving state law issues and to invoke the benefits of the automatic stay to protect her real estate interests. Upon the modification of that stay, jurisdiction over the Debtor's five real estate holdings effectively passed to the state courts, and four of those properties have been sold. There is no likelihood that this case will result in the rehabilitation of the Debtor's business or the orderly liquidation of her remaining assets. The only present purpose being served by this case is to provide a basis for federal jurisdiction over the Horizon lawsuit. Absent some legitimate reorganization objective achievable in a Chapter 11 case (which might include the orderly liquidation of assets), Chapter 11 cannot be used merely to provide a federal forum for a lawsuit. Since no such objective is achievable here, Horizon's motion to dismiss the Debtor's Chapter 11 case "for cause" is granted.

An Order will be entered dismissing the case for cause.