**In re PARK PLACE ASSOCIATES, an Illinois limited partnership, Debtor.**

**Bankruptcy No. 89 B 12380.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 31, 1990.

Timothy J. Rivelli, Winston & Strawn, Chicago, Ill., for Heller Financial, Inc.

A. Daniel Feldman, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for debtor.

## MEMORANDUM OPINION ON HELLER MOTION FOR SANCTIONS

JACK B. SCHMETTERER, Bankruptcy Judge.

On July 26, 1989 Park Place Associates, an Illinois limited partnership ("Park Place or Debtor"), filed in this case a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Shortly thereafter Heller Financial, Inc. ("Heller"), the principal secured creditor of Park Place, moved to lift the automatic stay under 11 U.S.C. § 362 and/or to dismiss the case pursuant to 11 U.S.C. § 1112(b). The latter motion was allowed and this case was dismissed.

Heller then moved under Bankruptcy Rule 9011 for sanctions against Park Place and its bankruptcy counsel Schwartz, Cooper, Kolb & Gaynor.[1] Heller seeks as

---

1. Heller's motion seeks sanctions from the law firm Schwartz, Cooper, Kolb & Gaynor, not an

sanctions the amount of all costs and attorneys fees incurred by it in connection with the Park Place bankruptcy. The parties have now fully briefed the issue. For the reasons discussed below, Heller's motion is denied.

*Facts*

The facts pertinent to this motion are derived from: (a) this court's "Findings of Fact and Conclusions of Law on Heller Financial's Motion to Dismiss" decided on November 21, 1989, 115 B.R. 940 (the "Findings") (which adopts by reference additional findings made from the bench on September 12, 1989); and (b) the "Stipulation" dated June 18, 1990 entered into by the parties.

Park Place's principal asset was the Orland Park Place Mall (the "Mall"). Park Place had acquired the property and built the Mall with funds it obtained through a loan from Heller. Park Place granted Heller a mortgage to secure this loan. On June 30, 1988 Park Place defaulted on its outstanding loan to Heller. At that time, Park Place owed Heller in excess of $40,000,000 and Heller was significantly undersecured.

On February 14, 1989 Heller filed a foreclosure action in the Circuit Court for Cook County, Illinois. From that date to the end of June 1989, the parties were involved in settlement negotiations and made substantial efforts to settle their dispute. Heller ultimately terminated the negotiation over a nonfinancial issue.

On July 12, 1989 Heller filed in state court an "Emergency Motion to Place Mortgagee in Possession." The hearing on that motion was set for July 27, 1989. On July 26, 1989, the day before the scheduled hearing, Park Place filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

On August 3, 1989 Heller moved to lift the automatic stay and/or have Park Place's bankruptcy case dismissed. A preliminary hearing was held on Heller's motion pursuant to 11 U.S.C. § 362(d). On September 28, 1989 this court issued an order modifying the automatic stay to permit Heller to proceed with its foreclosure action.

On November 13, 1989 Park Place entered an agreed order placing Heller in possession of the Mall.

On November 21, 1989 this court entered the above mentioned Findings based on which Heller's motion to dismiss Park Place's bankruptcy case was granted. Those Findings are summarized as follows:

The Mall was Park Place's primary asset and its sole source of operating revenue. In the months prior to filing its bankruptcy case, Park Place was generating monthly rent revenue of only $115,000, but was incurring monthly operating expenses of $100,000, real estate taxes of $85,626, interest on prior unpaid taxes of $9,831, plus the monthly debt service owed to Heller. It was also apparent that substantial sums of money would be necessary to finance the "build-out" costs associated with acquiring new tenants for the Mall. Tenants were desperately needed; occupancy in the Mall had fallen to less than 46%.

Both new financing and a marketing plan were needed to remedy the problem and potentially reorganize the Mall. At the preliminary hearing William Spatz, originally the general partner of Park Place, testified that his father might be willing to provide funding through certain guarantees. At the close of the preliminary hearing the court denied Hel-

---

individual lawyer at that firm. As Debtor points out, the Supreme Court specifically held (prior to the date Heller filed its motion for sanctions) that only the individual lawyer who signed the paper which violated Rule 11, not the attorney's law firm, can be held liable under that rule (and by analogy under Bankruptcy Rule 9011). *Pavelic & LeFlore v. Marvel Entertainment Group,* — U.S. ——, 110 S.Ct. 456, 458–59, 107 L.Ed.2d 438 (1989); *TMF Tool Co.,* *Inc. v. Muller,* 913 F.2d 1185, 1190 (7th Cir. 1990). Heller has not amended its motion to name the individual attorney that it contends is responsible for the alleged violation of Bankruptcy Rule 9011, nor has it otherwise addressed this point. On this ground alone the motion must be denied. Because this omission could be remedied, however, it is appropriate to deal with the merits.

ler's motion, but made clear that further continuance of the automatic stay after the final hearing would depend on Debtor's ability to produce hard evidence of financing or the guarantees Spatz described.

This funding never materialized, nor was any evidence of other alternative sources of financing presented. Further, Park Place presented very little evidence that it had a comprehensive marketing plan to reinvigorate the Mall. On the basis of this information the court concluded that Park Place had no chance for a successful rehabilitation in Chapter 11. The court therefore concluded that Park Place's bankruptcy case was serving primarily as a basis for federal jurisdiction of the lender liability suit it had filed against Heller, and granted Heller's motion to dismiss pursuant to 11 U.S.C. § 1112(b).

*Jurisdiction*

United States District Courts have subject matter jurisdiction over cases under Title 11 and proceedings arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. § 1334(a), (b). Each district court is specifically authorized to refer such proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a). The United States District Court has made such a referral pursuant to local District Rule 2.33.

■ In core proceedings that arise under or arise in Title 11 a bankruptcy judge is authorized to hear and determine the proceeding. 28 U.S.C. § 157(b)(1). A motion to award sanctions is a core proceeding under 28 U.S.C. § 157(b)(2)(A). *In re Memorial Estates, Inc.,* 116 B.R. 108 (N.D.Ill. 1990).

*Discussion*

Bankruptcy Rule 9011 provides in part: Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. ... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.

Bankruptcy Rule 9011 is essentially identical to Federal Rule of Civil Procedure 11. Cases interpreting Rule 11 are useful precedent when construing Bankruptcy Rule 9011. *In re D.C. Sullivan Co.,* 843 F.2d 596, 598 (1st Cir.1988); *In re Chas. A. Stevens & Co.,* 108 B.R. 191, 194 (Bankr.N. D.Ill.1989). See also *In re American Reserve Corp.,* 840 F.2d 487 (7th Cir.1988) (Bankruptcy Rule 9011 is a parallel to Rule 11); *Memorial Estates,* 116 B.R. 108 (Bankruptcy Rule 9011 is the "bankruptcy equivalent" of Fed.R.Civ.P. 11); *In re Chicago Midwest Donut, Inc.,* 82 B.R. 943, 948 (Bankr.N.D.Ill.1988).

■ Bankruptcy Rule 9011 consists of both a subjective and an objective component. *See Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 931 (7th Cir. 1989) (en banc) (construing Fed.R.Civ.P. 11). *See generally Cooter & Gell v. Hartmarx Corp.,* —— U.S. ——, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). If a paper is "interposed for any improper purpose," it is sanctionable even if it is warranted by existing law and supported by the facts. *Mars Steel,* 880 F.2d at 931–32. On the other hand, a paper filed with the purest of intentions is sanctionable if a reasonable inquiry into the facts and law was not made beforehand. Id. at 932. "How much investigation should have been done in a given case becomes a question of line-drawing, as much a matter of 'fact' as is the purpose behind the paper." Id. at 933. Rule 11 does not impose a continuing duty on parties to revise previously filed papers to conform to newly discovered evidence.

*Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1200 (7th Cir.1990). For sanction purposes the focus is on what the party intended and what that party knew or should have known on the day the paper was filed.

### a. Reasonable Investigation

Heller's motion can be read as being predicated only upon the subjective prong of Bankruptcy Rule 9011, that the petition was filed for an improper purpose. However, Heller repeatedly asserts that Park Place and its counsel knew or should have known when it filed the bankruptcy petition that it had no ability to reorganize under Chapter 11 because it had neither financing nor a marketing plan. *See, e.g.,* Heller Br. at 10, Heller Reply Br. at 1, 5. The court therefore initially considers whether a reasonable investigation by Park Place and its counsel into the facts and the law would have revealed that dismissal pursuant to 11 U.S.C. § 1112(b) was a foregone conclusion at the time the petition was filed.

Heller has made no specific allegation that Park Place or its counsel failed to investigate adequately the past financial data for the Mall. Rather, the inference is that Park Place and its counsel should have ascertained from that data that a reorganization was not feasible.

It is axiomatic that a primary purpose of the automatic stay is to give the debtor some "breathing space" from its creditors. This breathing space permits the debtor to plan its reorganization, which often will involve efforts to obtain financing and formulate a business plan. In the typical piece of civil litigation the purpose of the lawsuit is to sort out responsibility for events that have already occurred. In contrast, the filing of a petition under Chapter 11 is often done in contemplation of the fact that the relief afforded by the automatic stay will provide an opportunity for the debtor to sort things out and put together a reorganization plan. In other words, to some extent the purpose of the filing of the petition is to use the protection afforded by the automatic stay to conduct a further investigation as to whether a reorganization is feasible. Therefore when the bankruptcy petition is filed, even a debtor and its counsel who have conducted a reasonable investigation into the facts and law must to some extent speculate as to future events.

Considering the foregoing and the record of Findings earlier made by the Court in this case, it cannot be concluded that Debtor's bankruptcy petition was frivolous or necessarily futile when it was filed. The ability to effectuate a plan ultimately depended on Park Place finding the requisite financing. Some preliminary investigation of the availability of financing occurred before filing. One possible source of financing was Mr. Spatz's father. This possibility might well have been explored and resolved earlier than it was. However, the ability to arrange financing probably also hinged on the ability to put together a new marketing plan that was attractive to potential investors, lenders, or purchasers. This required at least a short period of time following the filing in bankruptcy. Neither the financing nor the marketing plan materialized and the case was dismissed, but success was not so implausible and dismissal cannot be said to have been foreseeable at the outset so as to make the filing itself sanctionable.

As this court's Findings indicate, the facts in this case contain many of the indicia of the classic bad faith case outlined by the Fifth Circuit in *In re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir. 1986). The application of these factors, however, is not an exact science and the lack of predictability in this area has been frequently noted. *See, e.g., In re N.R. Guaranteed Retirement, Inc.*, 112 B.R. 263, 271 (Bankr.N.D.Ill.1990) (noting that the good faith "teaching is hard to apply."); *In re Victory Construction Co.*, 42 B.R. 145, 149 (Bankr.C.D.Cal.1984) (good faith "function[s] at such a high level of abstraction that one can scarcely discern what might be underneath it."); Haines, *Good Faith: An Idea Whose Time Has Come and Gone*, Norton Bankr.Law Adviser at 2 (April 1988) (noting that as the number of factors considered in the good faith analy-

sis continues to grow, "the exercise of judicial discretion increases and the predictability of the outcome decreases."). Sanctions under the objective prong of Bankruptcy Rule 9011 are not appropriate where, as here, dismissal on bad faith grounds was not readily foreseeable when the case was filed.

### b. Improper Purpose

Heller argues that Park Place interposed its bankruptcy petition for the improper purpose of delaying Heller's obtaining possession of the Mall in state court and to inflict additional cost and expense on Heller. Specifically what is at stake are the attorneys fees and related costs Heller incurred in pursuing the motion to dismiss.[2] Heller asserts that Park Place filed its petition to inflict those costs on Heller and that this constitutes harassment under Bankruptcy Rule 9011. This implicates the subjective component of that rule.

Heller infers Park Place's asserted improper intent and purpose from its view that when the bankruptcy petition was filed Park Place had no hope of successfully reorganizing. In other words, Heller asserts that Park Place had no possibility of reorganizing, that Park Place and its counsel knew this, and that they therefore filed the bankruptcy petition for an improper purpose. This in Heller's view is corroborated by the fact that this court dismissed Park Place's petition pursuant to 11 U.S.C. § 1112(b) on the ground that it was filed in bad faith.

As a number of courts have recognized, the standards for dismissing a case pursuant to the good faith requirement implied in 11 U.S.C. § 1112(b) are different than the improper purpose standard for imposing sanctions under Bankruptcy Rule 9011. *See, e.g., In re Endrex Investments, Inc.,* 111 B.R. 939, 944 (D.Colo.1990); *In re HBA East, Inc.,* 101 B.R. 411, 418 (Bankr.E.D.N.Y.1989); *In re Southern California Sound Systems, Inc.,* 69 B.R. 893, 901 (Bankr.S.D.Cal.1987).

*Cf. In re Cedar Falls Hotel Properties Ltd. Partnership,* 102 B.R. 1009 (Bankr.N.D.Ia.1989). As the court in *California Sound Systems* observed, "the appellation 'bad faith filing' is perhaps a misnomer in that it implies the existence of ill will or malicious conduct on the part of debtor prior to filing for relief." 69 B.R. at 901 n. 2. In the Northern District of Illinois the determination of whether a bankruptcy petition is filed in good faith is made by an analysis of objective standards geared toward evaluating "whether reorganization is the proper course of action in a particular debtor's case." *In re Mandalay Shores Cooperative Housing Assoc., Inc.,* 63 B.R. 842, 848 (N.D.Ill.1986). A dismissal under this criterion is by no means synonymous with a finding that a case was filed with intent to harass a creditor. Therefore, a dismissal of a case on the grounds that it was filed in bad faith does not in itself compel imposition of sanctions under Bankruptcy Rule 9011.

As previously discussed, this Court rejects Heller's contention that when the bankruptcy petition was filed Park Place and its counsel knew or should have known that there was little serious chance for a successful reorganization. The facts no doubt indicated that a successful reorganization would be quite difficult. However, in the absence of proof offered to the contrary, it appears from the record here that the purpose of the filing was to obtain time to explore the possibilities of reorganization, not to inflict costs on Heller. As one bankruptcy court recently explained:

> Virtually every bankruptcy petition is filed with the intent to delay creditors to some extent. This is generally referred to as giving the debtor "breathing room" to get back on its feet in order to make it better able to pay off its creditors.

*Cedar Falls Hotel Properties,* 102 B.R. at 1016.

Finally, the filing of its bankruptcy petition also enabled Park Place to begin pur-

---

**2.** Other losses allegedly incurred by Heller during the bankruptcy include any loss resulting from otherwise avoidable deterioration of the Mall while the case was pending, and the lost opportunity cost it incurred in having its investment tied up in bankruptcy where as an undersecured creditor it was not entitled to interest.

suing its lender liability suit against Heller in federal court rather than in state court. Undoubtedly this was one factor that Park Place considered in determining whether to file its petition. When it later became clear that new financing and a marketing plan were not going to develop, this court dismissed the case because at that time it was clear that the bankruptcy was serving *only* as a vehicle with which to litigate in federal court. However, Park Place's consideration of what it perceived to be the advantages of pursuing its lender liability claim in federal court as one factor in its evaluation of whether to file in bankruptcy does not mean that it filed its bankruptcy petition in violation of Bankruptcy Rule 9011.

From the earlier hearing and Findings, it cannot be concluded that Park Place's petition was filed with intent to harass Heller. No evidence has been offered and no allegation was pleaded to show that there was more behind the circumstances of filing than was demonstrated by evidence at the earlier hearing.

The subjective prong of Bankruptcy Rule 9011 is a fact-specific inquiry. The authority relied on by Heller is distinguishable. *See, e.g., Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584, 586 (3rd. Cir.1985) (affirmed sanctions award where bankruptcy court found that debtor's bankruptcy petition was motivated "not by a desire, or need for reorganization, but simply to stave off a sheriff's sale" and to clarify the amount of the state court judgment); *In re Indian Rocks Landscaping of Indian Rocks Beach, Inc.*, 77 B.R. 909 (Bankr.M.D. Fla.1987) (sanction awarded where debtor had only one creditor and no business, assets, or source of income and was not validly incorporated); and *In re French Gardens, Ltd.*, 58 B.R. 959 (Bankr.S.D.Tex. 1986) (sanctions imposed after two affiliated partnerships holding second liens on an apartment building filed consecutive bankruptcy petitions after they had previously consented to an earlier confirmed plan of reorganization under which the first lien holder was to obtain possession if the owner/initial debtor of the building defaulted).

Heller's motion for sanctions will by separate order be denied.