### In re INTERNATIONAL ORIENTAL RUG CENTER, INC., Debtor.

**Bankruptcy No. 93 B 10242.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 23, 1994.

Robert R. Benjamin, Benjamin Berneman & Bruesch, Chicago, IL, for debtor.

Michael Desmond, Chicago, IL, Asst. U.S. Trustee.

Phil Harris, Schiff Hardin & Waite, Chicago, IL, for Village of Downers Grove, IL.

## MEMORANDUM OPINION ON CROSS–MOTIONS FOR SANCTIONS

JACK B. SCHMETTERER, Bankruptcy Judge.

The debtor International Oriental Rug Center, Inc. ("Debtor") filed for relief under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C. On its motion, that proceeding was dismissed, but with reservation of jurisdiction over the pending cross-motions for sanctions.

The Village of Downers Grove (the "Village"), although not a creditor, moved under Fed.R.Bankr.P. 9011 to sanction Debtor for its filing of a motion against it and also for asserted bad faith filing of the bankruptcy petition. Debtor filed its cross-motion for Rule 9011 sanctions, arguing that the Village lacked standing to file its motion. The United States Trustee supported the Village's position and adopted it. No party has requested an opportunity to offer evidence, and all rested on their briefs and the record.

The Village is found to have standing to seek sanctions relating to the motion filed against it, but not to seek sanctions for the original bankruptcy filing. However, since the United States Trustee adopted its motion, the standing issue is largely moot.

For reasons stated below (which will stand as Findings of Fact and Conclusions of Law), the Village's motion for sanctions pertaining to Debtor's motion against the Village is allowed by separate order; the balance of its motion and Debtor's cross-motion are denied.

### INTRODUCTION

Debtor filed its voluntary petition for relief under Chapter 11 on May 11, 1993, a week before its Village license to hold a liquidation sale license was to expire. The next day, Debtor moved here for an order to "invalidate" § 8–68 of the Village's Municipal Code ("Invalidation Motion"), a provision by which it governs inventory liquidation or going-out-of-business sales outside of bankruptcy.[1] In filing that Invalidation Motion, Debtor claimed to apprehend that § 8–68 would infringe upon its ability to advertise in bankruptcy. This Court ruled on May 14, 1993, that the Invalidation Motion was moot because Debtor was not conducting a liquidation sale and could not do so except with leave of this Court; that if it acted under Court authority, the ordinance would not apply; and therefore the Village ordinance in no way interfered with Debtor's reorganization.

Subsequently, and throughout the bankruptcy, the Village and United States Trustee complained of advertisements by Debtor that falsely implied liquidation sales. The Court barred such deceptive advertisements and required that all future advertisements be pre-approved. In a competitive world where so many sellers of oriental rugs appear to conduct "going-out-of-business sales" as an ongoing business technique, Debtor chafed under these restrictions. Under Court order to file a plan of reorganization, it did so. That Plan provided for liquidation over a very long period, something suspiciously like a long-term going-out-of-business sale. The United States Trustee and the Village objected. On October 6, 1993, the United States Trustee moved for appointment of a Chapter 11 trustee. On October 29, 1993, the bankruptcy proceeding was dismissed on Debtor's motion, but only under

---

1. *Section 8–68, Inventory Liquidation Sales—License Required*

(a) Except as otherwise provided in subsection (b) herein, no person shall directly or indirectly conduct or advertise any sale open to the public within the village that is represented to be an insurance, salvage, removal, going out of business, insolvent's, assignee's, or creditor's sale of goods or a sale of goods which have been damaged by fire, smoke, water, or otherwise, without first having obtained a license therefore from the village clerk.

(b) No license shall be required for the following:

    (1) Sales directly ordered by any court or referee in bankruptcy;

    (2) Sales by any person acting under the direction and supervision of state or federal court in the course of their official duties;

    (3) Sales by a person regularly engaged in insurance or salvage sales of goods, or sales of goods which have been damaged by fire, smoke, water, or otherwise, who acquired the goods for the account of others as a result of fire or other casualty. (Ord. No. 2167, § 6; Ord. No. 3045, § 1.)

conditions that protected payments due administrative creditors and barred any early refiling.

On the day of dismissal, the Village moved for sanctions under Fed.R.Bankr.P. 9011 ("Sanctions Motion") against Debtor and its counsel, Robert Benjamin ("Benjamin"). The Sanctions Motion sought to recover attorney's fees and expenses incurred by the Village, not only for responding to Debtor's Invalidation Motion, but also for work of its counsel in monitoring the case and Debtor's efforts to use the questioned advertisements. The United States Trustee joined in the latter aspect, which attacked the bankruptcy filing as being in bad faith.

On November 12, 1993, Debtor responded to the Village's Sanctions Motion with its own Cross–Motion for Sanctions ("Cross–Motion") under Fed.R.Bankr.P. 9011. The Cross–Motion sought to sanction the Village and its counsel for filing its Sanctions Motion, assertedly without standing, and for purpose of harming Debtor's counsel.

### JURISDICTION

These matters are before the Court pursuant to 28 U.S.C. § 157 and are referred here under Local District Court Rule 2.33. The Court has core jurisdiction under 28 U.S.C. § 157(b)(2)(A). When the bankruptcy proceeding was dismissed, jurisdiction was reserved to consider and resolve the instant motions.

### DISCUSSION

#### A. The Standing Issue

■ As earlier observed by the Court on the record, the Village has standing to assert its Sanctions Motion for filing of the Invalidation Motion. Transcript of Proceedings on October 29, 1993, pp. 8–10, 31–32. Debtor brought what amounted to a contested proceeding under Fed.R.Bankr.P. 9014, attacking application of a Village ordinance. Under standing standards discussed below, the Village clearly was entitled to defend an interest in its ordinance enforcement and has standing to seek sanctions for that motion.

There remains the interesting question of whether the Village has standing to seek sanctions based on its contention that Debtor filed and pursued its bankruptcy petition for an improper purpose. While that issue is at least partly mooted by the United States Trustee's joinder in the motion, this is an issue arguably relevant to Debtor's cross-motion, so it should be discussed.

The Village argues that Debtor's filing of the bankruptcy caused it significant expense by requiring it to participate in the entire proceeding. Such harm, it argues, confers standing to seek Rule 9011 sanctions for asserted bad faith filing of the entire bankruptcy proceeding.

Whether a party has standing is determined by 11 U.S.C. § 1109(b), which provides:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

Although § 1109(b) specifies certain parties that are parties in interest, the word "including" is not a limiting term. 11 U.S.C. § 102(3). "Further, courts have held that section 1109(b) must be interpreted broadly to allow persons affected by a Chapter 11 case to appear and be heard." *In re UNR Industries,* 71 B.R. 467, 471 (Bankr.N.D.Ill. 1987), *citing In re Amatex,* 755 F.2d 1034, 1042 (3d Cir.1985); *see also In re Farley, Inc.,* 156 B.R. 203 (Bankr.N.D.Ill.1993). Describing the parameters of § 1109(b), the Seventh Circuit stated:

> We think all the section means is that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an *in rem* proceeding—that everyone with a claim to the *res* has a right to be heard before the *res* is disposed of since that disposition will extinguish all such claims.

*In re James Wilson Associates,* 965 F.2d 160 (7th Cir.1992).

In *In re Farley,* 156 B.R. 203 (Bankr. N.D.Ill.1993), this Court applied the *James Wilson* criteria. There it was found that the Pension Benefit Guaranty Corporation ("PBGC"), although not a party specifically listed in § 1109(b), had standing to object to a fee application. PBGC had withdrawn any claim against the debtor in consideration for guarantees of future payment. Despite withdrawal of its claim, PBGC still maintained a significant interest in the financial health of the reorganized debtor. Money used to pay the debtor's attorneys "is coming out of the debtor's coffers—money which might otherwise be used to fund pension liabilities." *Farley* at 208.

Similarly, other courts have found that parties with future claims on an estate have standing to object to conduct that affects that estate, despite not being expressly covered by § 1109(b). For example, in *In re UNR Industries,* 71 B.R. 467 (Bankr.N.D.Ill.1987), putative asbestos claimants were found to have a party-in-interest status. These claimants demonstrated that their future claims significantly depended on the outcome of the bankruptcy proceedings. This dependence resulted in a sufficient stake in the outcome of the case to confer party-in-interest status under § 1109(b). *See also In re Johns–Manville Corp.,* 36 B.R. 743 (Bankr.S.D.N.Y. 1984).

■ Conversely, there is no party-in-interest standing where a party has no direct interest in the bankruptcy estate. For example, in *In re City of Bridgeport,* 128 B.R. 30, 31–32 (Bankr.D.Conn.1991), an association of municipalities argued that it represented many state municipalities and therefore had a substantial stake in the outcome of the bankruptcy proceeding. The bankruptcy court disagreed, ruling that party-in-interest status " . . . has come to mean an entity that has a direct legal interest at issue in the case, rather than an entity that is merely interested in the outcome." *Bridgeport* at 31–32 (citations omitted).

■ The Village fails to satisfy the party-in-interest standard as specified by the Seventh Circuit in *James Wilson.* Unlike *Farley* or the cases of putative asbestos claimants, the Village had no claim or asserted legally protected interest that could be affected by filing of the bankruptcy proceeding. To successfully argue party-in-interest status, it must show an interest which would be adversely affected by pendency of the bankruptcy proceedings it asserts to have been filed in bad faith.

The Village argues that Debtor's filing caused it to incur legal fees through monitoring of the bankruptcy and the need to object to certain improper advertisements placed by Debtor while under bankruptcy protection. It is true that the Village raised good questions about that advertising, questions that the United States Trustee also asserted because he has undoubted standing.

However, even if Debtor had not filed in bankruptcy, the Village would still have incurred the cost of first monitoring, then contesting, Debtor's advertising in state court. The Village does not demonstrate any direct financial or equitable interest peculiar to Debtor's bankruptcy estate or any interest directly affected by the filing of the proceedings here. The only interest of the Village was to ensure that Debtor not use misleading advertising. This salutary interest does not, however, confer standing on it to attack the initial bankruptcy filing.

■ A bankruptcy judge may, and arguably is required to, consider Rule 9011 sanctions against a party if serious facts suggest that this rule may have been violated.[2] Therefore, in absence of standing by any party, this Court would *sua sponte* reach the merits of the Village's claim that Debtor filed and maintained the bankruptcy petition without serious intent to reorganize, but merely to insulate itself from Village curbs on its advertisements. However, that is unnecessary because the United States Trustee, an undoubted party-in-interest, has adopted the Sanctions Motion.

2. Fed.R.Bankr.P. 9011 provides: "if a document is signed in violation of this rule, the court . . . on its own initiative, *shall* impose . . . an appropriate sanction. . . ." (emphasis added).

## B. Relationship of Bankruptcy Rule 9011 and Fed.R.Civ.P. 11

██ Fed.R.Bankr.P. 9011 [3] is almost identical to former Fed.R.Civ.P. 11, and "cases interpreting Rule 11 are applicable to Bankruptcy Rule 9011 issues." *In re Chapman*, 154 B.R. 258, 265 (Bankr.N.D.Ill.), *aff'd*, 159 B.R. 812 (1993), *citing In re Memorial Estates, Inc.*, 132 B.R. 19, 22 (Bankr. N.D.Ill.1991). Rule 9011 imposes four requirements on an attorney or party signing a motion or pleading:

██ There must be a "reasonable inquiry" into both fact and law; [2] there must be a good faith (that is, the paper may not be interposed "to harass"); [3] the legal theory must be objectively "warranted by existing law or a good faith argument" for the modification of existing law; and [4] the lawyer must believe that the complaint is "well grounded in fact."

*In re Chapman*, 154 B.R. 258, 266 (Bankr. N.D.Ill.1993), *citing Thompson v. Duke*, 940 F.2d 192 (7th Cir.1991).

Fed.R.Civ.P. 11 was recently amended (effective Dec. 31, 1993, after this case was dismissed), while Fed.R.Bankr.P. 9011 was not. However, since the standard under Bankruptcy Rule 9011 is virtually the same as the standard under old Fed.R.Civ.P. 11, the cases interpreting former Fed.R.Civ.P. 11 apply here.

██ Rule 9011 consists of both a subjective and an objective element. As observed in *Mars Steel Corp. v. Continental Bank, N.A.*

[i]f a paper is "interposed for any improper purpose," it is sanctionable even if it is warranted by existing law and supported by the facts. *Mars Steel*, 880 F.2d at 931–32. On the other hand, a paper filed with the purest of intentions is sanctionable if a reasonable inquiry was not made beforehand.

880 F.2d 928, 931 (7th Cir.1989).

## C. Debtor's Filing of the Bankruptcy Proceeding Does Not Warrant Sanctions

The Village and United States Trustee argue that Debtor filed its bankruptcy solely for the improper purpose of using misleading advertising, and therefore it filed in bad faith.

The filing of a petition in Chapter 11 is often done to receive the benefits afforded by the automatic stay and to provide an opportunity for the debtor to investigate its affairs and put together a plan of reorganization. *In re Park Place Associates*, 118 B.R. 613, 617 (Bankr.N.D.Ill.1990). But the Village and the United States Trustee argue that there was "no logical reason" for filing of this bankruptcy petition. The largest creditor, Allegretti Rug Co., Inc. ("the Allegretti Company"), is owned and controlled by insiders of this Debtor. The Village argues that

... [w]hile the Debtor has concocted the theory that Allegretti Rug Co., Inc. forced the filing of this case, there is virtually nothing in the record to substantiate this theory. In summary, there appears to have been no legitimate basis for the filing of the Chapter 11 petition.

This Chapter 11 proceeding appears to have been nothing more than a scheme to permit Mr. Mark Allegretti to continue to use deceptive advertising practices in his business, and avoid the licensing requirements of the Village of Downers Grove. The Debtor's liquidating plan in and of itself provides no evidence of a good faith filing; rather it was nothing more than an ill-fated attempt to legitimatize this Chapter 11 proceeding and was in fact contrary to the Debtor's prior representations to

---

**3.** Rule 9011 provides in part:

Every ... pleading ... served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record ... The signature of an attorney ... constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it ... an appropriate sanction....

this Court that the Debtor was not liquidating.

From the affidavit filed by Mark Allegretti as one condition of dismissal, it appeared that the Allegretti Company had substantial pre-bankruptcy debt (over $451,000.00 to several creditors) and that it owned the assets used in Debtor's business. Debtor evidently incurred obligations to its parent company, the Allegretti Company, as it sold carpets owned by that company. However, there was no evidence of serious threat by the parent to litigate against the Debtor since both are controlled by the same individual.

Was the motive behind the bankruptcy filing wholly an invidious one to conduct phoney liquidating sales under bankruptcy court protection? Or was there some useful or legally possible method by which Debtor could restructure debt due its parent?

■ Sanctions against the very filing of a bankruptcy petition under Rule 9011 must rest on principled grounds that do not amount to imposing bars on bankruptcy that Congress has not imposed. Debtor need not claim insolvency to file, and, absent statutory grounds for dismissal, or what has been recognized as "bad faith" in Chapter 11, attempts to restructure debt due a parent corporation are not forbidden.

The issue presented by the instant sanction motion has two aspects: first, whether there was a "bad faith" filing, and, if so, then whether Rule 9011 was violated. Because movants have not met their burden to demonstrate the first, we do not reach the second.

■ Statutory criteria for dismissing a Chapter 11 proceeding are set forth under § 1112 of the Code. It is well established that the enumerated causes set forth in § 1112 are not exclusive. Although bad faith is not one of the ten grounds for dismissal promulgated in 11 U.S.C. § 1112(b), circuit courts have recognized and affirmed the authority of bankruptcy courts to dismiss Chapter 11 cases that fail to meet a good faith standard. *See, e.g., In re Madison Hotel Assoc.,* 749 F.2d 410, 426 (7th Cir.1984) (*dicta*); *In re Natural Land Corp.,* 825 F.2d 296 (11th Cir.1987); *In re Little Creek Develop-*

*ment Co.,* 779 F.2d 1068 (5th Cir.1986). The concept of good faith as a prerequisite for filing a Chapter 11 case was discussed in *In re Winshall Settlor's Trust,* which stated:

> Factors relevant in examining whether a Chapter 11 petition has been filed in good faith include whether the debtor has any assets, whether the debtor had an ongoing business to reorganize, and whether there was a reasonable probability of a plan being proposed and confirmed.

758 F.2d 1136, 1137 (6th Cir.1985) (citations omitted).

■ In ruling on a motion to dismiss a case for lack of good faith, the Court must be mindful of, and attempt to preserve, the delicate balance of interests fashioned by Congress under Chapter 11 of the Bankruptcy Code. *See, e.g., In re Johns–Manville Corp.,* 36 B.R. 727, 735–37 (Bankr.S.D.N.Y.1984).

In *In re Schlangen,* 91 B.R. 834, 837 (Bankr.N.D.Ill.1988), the Court stated that Chapter 11 was designed by Congress to prevent waste and reduction in assets that result from unnecessary liquidation. Congress meant to encourage financial restructuring and to re-establish efficient business operations with the goals of permitting greater payments to creditors than could otherwise be made, while also preserving jobs and shareholders' interest. *See, e.g., In re HBA East, Inc.,* 87 B.R. 248, 259 (Bankr.E.D.N.Y. 1988), *citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. at 220–21 (1977), *reprinted in* 1978 U.S.C.C.A.N. pp. 5787, 5963, 6179. The good faith standard is the bankruptcy court's equitable mechanism for assuring that a Chapter 11 case has at least the potential to serve those purposes. *Schlangen,* 91 B.R. at 837.

■ Good faith or the lack thereof is determined by objective standards and not the subjective intent of the debtor. *Id.; See generally In re Mandalay Shores Cooperative Housing Assoc., Inc.,* 63 B.R. 842 (N.D.Ill.1986).

The objective standards to be considered in determining whether filing was in bad faith have been set forth in many decisions. For example, *Little Creek* provided:

Several, but not all, of the following conditions usually exist. The debtor has one asset, such as a tract of undeveloped or undeveloped real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.

779 F.2d at 1072–73.

Judge Barliant of this Court has followed the preceding guidelines and in *Schlangen* added another test: whether the Chapter 11 case was being used as a litigation tactic in essentially a two-party dispute, where the primary purpose for filing the bankruptcy was to confer federal jurisdiction on what otherwise would be a two-party dispute involving issues of state law, and where there was no possibility of rehabilitation of debtor's business. *Schlangen,* 91 B.R. at 837.

■ Here, Debtor was a real business employing sales people and selling products. Most of its debt was due to its parent, and it had no apparent pressure from outside creditors. The bankruptcy filing did not impede creditors. There was at least a theoretical motive to restructure the debt due Debtor's

parent corporation. At least, it cannot be said that movants have shown otherwise.

If it were shown that Debtor had filed solely for the improper purpose of using misleading advertising, then Debtor's actions could be sanctioned for a bad faith filing. However, neither the Village nor the United States Trustee point to a substantial basis in the record to show that Debtor filed its bankruptcy petition solely for this improper purpose and without possibility for lawful reorganization.

The Village and United States Trustee offer the following undisputed matters of circumstantial evidence in the record: (1) the Motion to Invalidate was the first substantive motion filed; (2) Debtor's only articulated reason for filing in bankruptcy was to fend off a lawsuit supposedly threatened by a parent corporation; (3) Debtor ran several advertisements that in so many words falsely told of liquidating-type sales; (4) Debtor informed the Court of its intent to file a plan for a lengthy liquidation plan that looked suspiciously like another device to avoid the Village's ordinance; and (5) Debtor's voluntary dismissal of the bankruptcy proceeding after its advertising was curbed assertedly evidences Debtor's intention never to file a legitimate plan of reorganization.

The subjective standard under Bankruptcy Rule 9011 (filing with improper purpose) is a fact-specific inquiry. *See In re Park Place Associates,* 118 B.R. 613, 619 (Bankr.N.D.Ill. 1990), and cases cited. Debtor argues that, if its only intent was to use misleading advertising, it would not have done so under scrutiny of the Bankruptcy Court. Debtor also notes that, had the purpose of using misleading advertising been paramount, it would have filed the motion to dismiss once its advertising came under scrutiny instead of filing a plan. Finally, Debtor accurately notes that the United States Trustee and the Village have attempted to shift their burden of proof by requiring Debtor to prove that it did not file in bankruptcy in order to use misleading advertising. The Village and United States Trustee carry the burden here, both to demonstrate bad faith filing and grounds under Rule 9011.

Debtor has also adequately demonstrated that its filing was objectively warranted by existing law. A reasonable inquiry into the law and facts could support Debtor's filing for the purpose of reorganizing its debts. The Seventh Circuit has held that "... the Bankruptcy Code permits an individual or firm that has debtors to declare bankruptcy even though he (or it) is not insolvent." *In re James Wilson Associates,* 965 F.2d 160, 170 (7th Cir.1992). No proof has been brought forth to show that Debtor had no intention of reorganizing its debts. In fact, Debtor filed a timely plan of liquidation (albeit one open to question) in order to do just that.

Accordingly, the Village and United States Trustee have not shown that Debtor's bankruptcy petition was filed in bad faith. Therefore, no sanctions are allowed under Rule 9011.

### D. *Debtor's Filing of the Invalidation Motion Is Sanctionable*

■ On May 11, 1993 (the "Petition Date"), Debtor filed here its voluntary petition for relief ("Petition") pursuant to Chapter 11 of the United States Bankruptcy Code.

Debtor conducts a retail oriental rug sales operation at 224 Ogden Avenue in Downers Grove. Debtor remained in possession of its assets and continued operation of its business while in bankruptcy.

The Village is a Home Rule entity pursuant to Article 7 of the Illinois Constitution. Pursuant to that authority, the Village enacted § 8–68 of the Downers Grove Municipal Code (the "Municipal Code") governing inventory liquidation sales. Municipal Code § 8–68 requires that retail operations which want to conduct or advertise a liquidation sale obtain a license from the Village. *See* n. 1. above.

Prior to the Petition Date, on February 26, 1993, Debtor applied for and received a license from the Village to conduct a liquidation sale beginning on March 19, 1993. By its terms, that license was to expire on May 18, 1993, one week after Debtor filed the Petition.

On May 12, 1993, the day after the bankruptcy petition, Debtor filed its Invalidation Motion. In that Motion, Debtor sought an order to "invalidate" Municipal Code § 8–68 or, alternatively, to hold that it was operating within an exemption stated in that ordinance.

At the hearing held May 14, 1993, there were representations to the Court by Debtor's counsel that Debtor was not conducting a liquidation sale and was continuing to deal normally with trade creditors and customers.

The Village ordinance in question clearly did not apply or require licenses for liquidation sales carried out under court orders, including bankruptcy court orders. Since Debtor's counsel denied that any liquidation sale was underway or intended, and he acknowledged that he would need this Court's authority to hold one, the Village ordinance had no possible application. To drag the Village into court over a non-existent issue or dispute was an obvious abuse and exercise in frivolity. Debtor's counsel, Mr. Benjamin, was responsible for that frivolity, and he will be joined in the sanction for bringing it.

The apparent motive for this peculiar motion was soon revealed when the Village and United States Trustee protested Debtor's advertisements that substantially promised liquidation prices to the public, even though no order authorized any liquidation out of the usual course of business. Debtor evidently hoped, through the Invalidation Motion, to prevent the Village from supervising its liquidation-type sales not authorized either by this Court or by Village license. Since that motive was surely a wrongful purpose and a misuse on top of frivolity, the actual cost to the Village of defending against the Motion will be doubled by way of sanctions in order to deter such conduct by Debtor or others.

That actual cost to the Village is measured by work of Village counsel to prepare for and attend the hearing on the Invalidation Motion and then to report results to the Village. The time reports of counsel show that this work started May 13, 1993, and ended May 26, 1993. The cost of that service at usual billing rates totalled $1,192.50. Because the Motion was based on improper motive, that figure will be doubled. The expense of $44.00 for the May 14 transcript will then be

added, for a grand total of $2,429.00 as the sanction.

Since the bankruptcy proceeding has been dismissed, it is appropriate for judgment to be entered in that amount so as to bring finality to this case and enable the Village to take steps to collect the sanction.

### E. *Debtor's Cross–Motion Against the Village Lacks Merit*

Debtor argues that the Village failed to investigate properly whether it had standing to bring its Sanctions Motion. Further, it argues that the Village filed its Sanctions Motion for the improper purpose of attacking Debtor's counsel personally.

The Village had standing to bring part of its motion and could reasonably believe it had standing under the various authorities earlier discussed to bring the rest of its Sanctions Motion. The Village argued that legal fees it incurred in an effort to object to Debtor's improper advertisements and thereby protect its ordinance policy resulted in a legally protected interest and thus conferred party-in-interest standing. That was a good faith argument for modification or extension of existing law. *See In re Excello Press,* 967 F.2d 1109 (7th Cir.1992) (attorney properly relied on modification of existing law where no court in the Circuit had decided the issue). Further, support by the United States Trustee lends credence to reasonable belief of the Village counsel that it had standing under existing law. Finally, Debtor offered no factual basis to support its theory that the Village filed its motion for the improper purpose of personally attacking Debtor's counsel.

Therefore, Debtor has not established that the Village violated Bankruptcy Rule 9011 by filing its Sanctions Motion.

### CONCLUSION

Accordingly, Debtor has not demonstrated that sanctions under Bankruptcy Rule 9011 are appropriate on its cross-motion. Further, no sanctions are appropriate for the bankruptcy filing. However, sanctions will be allowed in the amount of $2,429.00 for Debtor's filing of its frivolous and improperly motivated Invalidation Motion. Judgment therefor is separately entered.